SOUTHLAND GASOLINE CO. *v.* BAYLEY ET AL.*

No. 581. Submitted April 5, 1943.—Decided May 3, 1943.

*Mr. Claude H. Rosenstein* submitted for petitioner in No. 581. *Mr. George A. Mahone* for petitioner in No. 725.

*Mr. C. D. Atkinson* submitted for respondents in No. 581. *Messrs. O. Bowie Duckett, Jr.,* and *Charles T. Le-Viness,* with whom *Mr. Edward E. Hargest, Jr.,* was on the brief, for respondent in No. 725.

*Solicitor General Fahy* and *Messrs. Robert L. Stern* and *Irving J. Levy* and *Miss Bessie Margolin* filed a brief, in No. 581, on behalf of the Administrator of the Wage and Hour Division, U. S. Department of Labor, as *amicus curiae,* urging affirmance.

*Together with No. 725, *Richardson* v. *James Gibbons Co.,* on writ of certiorari, 318 U. S. 750, to the Circuit Court of Appeals for the Fourth Circuit,—argued April 5, 1943.

MR. JUSTICE REED delivered the opinion of the Court.

By writs of certiorari these two cases were brought here to resolve the conflict between them over the proper interpretation of § 13 (b) (1) of the Fair Labor Standards Act of 1938.[1]

Section 7 of the Fair Labor Standards Act relates to the maximum number of hours per week an employer may employ an employee who is engaged in commerce or in the production of goods for commerce.[2] The scope of the exemption from the maximum hour standards granted by § 13 (b) (1) in turn depends upon the interpretation to be given § 204 (a) of the Motor Carrier Act. The portions of that section which are important here are set out below.[3]

---

[1] 52 Stat. 1060, 1068, § 13 (b):

"The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935; or (2) any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."

[2] The pertinent provisions of § 7 are as follows:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 52 Stat. 1063.

[3] 49 Stat. 543, 49 U. S. C. § 301:

"Sec. 204. (a) It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this part, and to that end the Commission may establish reasonable

These cases turn upon the interpretation to be given the exemption, by § 13 (b) (1) of the Fair Labor Standards Act, of employees "with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." In the *Southland* case, the Circuit Court of Appeals for the Eighth Circuit construed this to exempt employees of private carriers of property from the requirements of the Fair Labor Standards Act only after the Interstate Commerce Commission has found need to establish maximum hours for such employees under the authority of § 204 (a) (3) of the Motor Carrier Act. *Bayley* v. *Southland Gasoline Co.*, 131 F. 2d 412. The Fourth Circuit, in the *Gibbons Company* case, was of the opinion that "power" in § 13 (b) meant the existence of the power and not its actual exercise. 132 F. 2d 627; cf. *Plunkett* v. *Abraham Bros. Packing Co.*, 129 F. 2d 419, 421, C. C. A. 6.

The employers in both cases are concededly private carriers of property, engaged in interstate commerce. All employees are subject to regulation to promote safety of operation under § 204 (a) (3). In both cases the employees seek recovery solely for the failure of their employers to pay them the time and a half for overtime as

requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this part, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. . . ."

required by § 7 of the Fair Labor Standards Act. There is no claim for unpaid overtime compensation after May 1, 1940, the date that the Interstate Commerce Commission first found need to establish reasonable requirements as to maximum hours to promote safety in the operations of private carriers of property by motor vehicle under § 204 (a) (3).

The problem of statutory construction posed by this conflict of circuits should not be solved simply by a literal reading of the exemption section of the Fair Labor Standards Act and the delegation of power section of the Motor Carrier Act. Both sections are parts of important general statutes and their particular language should be construed in the light of the purposes which led to the enactment of the entire legislation. *United States* v. *American Trucking Assns.*, 310 U. S. 534, 542. The words of the sections under consideration are, however, basic data from which to draw the sections' meaning. Section 13 (b) (1) exempts from the maximum hour limitation of the Fair Labor Standards Act those employees over whom the Interstate Commerce Commission "has power to" prescribe maximum hours of service. Section 204 (a) (3) certainly gives "power to" the Commission to establish maximum hours for the employees here involved. There is a limitation on the authority delegated, urged here by the employees as a condition precedent to the existence of the power. This is that the Commission may establish maximum hours only "if need therefor is found." Since the employees seek unpaid overtime compensation only for the period prior to a finding of need by the Commission, the employees argue that no "power" existed in the Commission during the time for which compensation is claimed. We conclude to the contrary. The power to fix maximum hours has existed in the Commission since the enactment of the Motor Carrier Act in 1935. Before that power could be used, it was necessary to make a

finding of need. Such a necessity, however, did not affect the existence of the power. Legislation frequently delegates power subject to a finding of need or necessity for its exercise.[4]

The general purposes of the Fair Labor Standards Act and of the Motor Carrier Act do not point to a different conclusion. With the adoption of the Motor Carrier Act, the national government undertook the regulation of interstate motor transportation to secure the benefits of an efficient system. Safety through the establishment of maximum hours for drivers was an important consideration. *Maurer* v. *Hamilton*, 309 U. S. 598, 604, 607. When Congress later came to deal with wages and hours, its primary concern was that persons should not be permitted to take part in interstate commerce while operating with substandard labor conditions. *United States* v. *Darby*, 312 U. S. 100, 115. The Fair Labor Standards Act sought a reduction in hours to spread employment as well as to maintain health. *Overnight Motor Co.* v. *Missel*, 316 U. S. 572, 576, 577. By exempting the drivers of motors from the maximum hour limitations of the Fair Labor Standards Act, Congress evidently relied upon the Motor Carrier provisions to work out satisfactory adjustments for employees charged with the safety of operations in a business requiring fluctuating hours of employment, without the burden of additional pay for overtime.

Not only does the language of § 13 (b) (1) indicate this Congressional purpose but what slight evidence there is from the legislative history points to the same conclusion. The amendment was adopted to free operators of motor

---

[4] Cf. Federal Food, Drug and Cosmetic Act, § 401, 52 Stat. 1046, 21 U. S. C. 341; Emergency Price Control Act of 1942, § 2, 56 Stat. 24; Fair Labor Standards Act, § 8d, 52 Stat. 1064, 29 U. S. C. 208; Public Utility Holding Company Act of 1935, § 11, 49 Stat. 820, 15 U. S. C. 79 (k); Tariff Act of 1930, § 350 (a), 48 Stat. 943, 19 U. S. C. 1351; Alien Enemy Act, R. S. 4067, 50 U. S. C. § 21.

vehicles from the regulation by two agencies of the hours of drivers. No comment appears as to the desirability of statutory limitation on their hours prior to the establishment of maximum hours by the Commission. 81 Cong. Rec. 7875; 82 Cong. Rec. 1573 *et seq.* No distinction was pointed out between common, contract, and private carriers, although there was a distinction in § 204 (a). It would seem that if the point now urged had been in the mind of Congress it would have itself expressed the intention to leave private carriers subject to the Fair Labor Standards Act until the Commission took action.[5] Even under the argument of the employees, those drivers who work for common or contract carriers would not at any time be subject to the maximum hour provision of the Labor Act. Furthermore, it was said on the Senate floor that the amendment as to motor vehicle operators was to give them the exemption from the Fair Labor Standards Act enjoyed by the railway employers under the Hours of Service Acts.[6] These do not provide for overtime pay and like the subsections of § 204 of the Motor Carrier Act are immediately effective to exempt the railroad employees covered by their provisions from the maximum hour provisions of the Fair Labor Standards Act. Cf. note 1. Since the employees of contract and common motor carriers, as well as railway employees, are exempt from the Fair Labor Standards provisions for maximum hours by virtue of the same words which govern private motor carriers' employees, it would require definite evidence of a

---

[5] An understanding that the Interstate Commerce Commission had already acted upon maximum hours for drivers may have shortened the discussion of the amendment. 81 Cong. Rec. 7875. Subsequent to this discussion and prior to the passage of the Labor Act, the Commission had acted for common and contract carriers. Ex parte MC–2, 3 M. C. C. 665, 690. Private carriers were held to need regulation by the decision of May 1, 1940, Ex parte MC–3, 23 M. C. C. 1.

[6] 81 Cong. Rec. 7875; 34 Stat. 1415, 39 Stat. 721.

contrary Congressional purpose toward private carrier employees to lead us to accept the argument advanced here by the employees. No such evidence appears.[7]

*No. 581, reversed.*
*No. 725, affirmed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

---

[7] District Courts which have interpreted § 13 (b) (1) have reached the same conclusion as we do. *Faulkner* v. *Little Rock Furniture Mfg. Co.,* 32 F. Supp. 590; *Bechtel* v. *Stillwater Milling Co.,* 33 F. Supp. 1010; *Fitzgerald* v. *Kroger Grocery & Baking Co.,* 45 F. Supp. 812; *Gibson* v. *Wilson & Co.,* 2 Federal Carriers Cases ¶ 9604; *Derer* v. *Snow Ice, Inc.,* 3 Federal Carriers Cases ¶ 80,029. The Wage and Hour Division of the Department of Labor has taken the position that the Fair Labor Standards Act applies to drivers of private carriers until May 1, 1940, the date the Interstate Commerce Commission determined that need existed for their regulation. Interpretative Bull. No. 9, 5 Wage & Hour Rep. 233, 235, March 30, 1942.