## KEELING v. HUBER & HUBER MOTOR EXPRESS, Inc.

### No. 632.

District Court, W. D. Kentucky, at Louisville.

June 8, 1944.

J. Paul Keith, Jr., and Jones, Keith & Jones, all of Louisville, Ky., for complainant.

Stanley B. Mayer, of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff James K. Keeling, on behalf of himself and six other employees of the defendant, Huber and Huber Motor Express, Inc., to recover overtime compensation, damages and attorneys' fees under the provisions of the Fair Labor Standards Act of 1938. Following a pre-trial hearing plaintiff and defendant have entered into a tentative stipulation of facts for the purpose of securing a ruling on a motion by the defendant to dismiss. If the ruling is adverse to the defendant, the case will proceed to trial with the stipulation eliminated.

The stipulated facts are summarized as follows: The defendant is engaged as a common carrrier in the transportation of goods throughout Indiana, Kentucky, Tennessee and Georgia. Its main garage is in a building at Eighth and Kentucky Streets, Louisville, Kentucky, large enough to hold from 12 to 15 motor vehicles of the type used by the defendant. It maintains at Indianapolis, Knoxville, Atlanta and Chicago stations which do minor repairs and at which are employed fulltime mechanics. At the main garage at Louisville approximately 35 men are employed, all of whom except the seven plaintiffs work as mechanics on the trucks. When a truck is driven into the garage for repairs, one of the mechanics goes over the truck and removes any of the broken or worn parts which are immediately replaced with others which he obtains from the stock-room. The stockroom is a separate part of the garage

wherein are kept extra parts of all kinds to fit all of the various types of trucks and vehicles of the defendant company. There are two or three regular employees of the company who are employed fulltime in the stock-room who do nothing but receive new parts and rebuilt parts, and, in turn, hand out to the ordinary mechanics parts that they require to fix the trucks on the floor. Immediately adjacent to the stock-room is a machine shop, which is a separate room. In this machine shop five of the plaintiffs were regularly employed in working on parts which had been removed from the trucks by the ordinary mechanics, who in turn delivered them to the wash rack where two colored boys had washed away the dirt and grease with a steam jenny. The two colored boys would in turn deliver the cleaned parts to the machine shop where the five plaintiffs referred to would repair and rebuild them. Upon completion of the rebuilding or repairing of a part the plaintiff who had done so would deliver it to the stock-room where it would be placed in a bin along with other similar parts. Hardly ever would the part repaired in this way be put back on the truck from which it was removed by the ordinary mechanic. Each of these five plaintiffs spent over 85% of his time in his machine shop and did no actual work on a truck itself except on very occasional jobs. It was the duty of the mechanic in replacing any particular part in a truck to determine whether or not the part which he received for that purpose was in satisfactory working order and to determine after it was installed whether or not the truck was in proper working order before it left the shop. None of these plaintiffs had anything to do with the installation of the parts into the trucks. One of the plaintiffs rebuilt batteries, working 85% of his time in a battery room immediately adjacent to the stock-room and machine shop. Usually the batteries were brought to the battery room and upon completing the work they would be delivered to the stock-room. This plaintiff put water in the batteries after they were installed in the trucks but this work required less than 5% of his time. Another plaintiff worked on tires in a corner of the garage where he kept on hand at all times a number of tires as extras. When a truck came into the garage with a flat or damaged tire he would replace it with one of his good tires, repair the damaged tire and put it with his stock. He spent the major part of his time repairing flat tires and remounting the tires on to rims. He did no recapping himself but did do vulcanizing and patching tubes.

Section 13(b) (1) of the Fair Labor Standards Act, Section 213(b) (1) of 29 U.S.C.A., provides that the provisions of Section 7 of the Act, 29 U.S.C.A. § 207, dealing with maximum hours, and overtime compensation, under which this action was brought, "shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935; * * *." Section 204, Section 304 of 49 U.S.C.A., reads as follows:

"It shall be the duty of the Commission— (1) To regulate common carriers by motor vehicles as provided in this part, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

The defendant claims that under the foregoing facts the plaintiffs are such employees as are included within the provisions of Section 204 and therefore are exempt from the provisions of the Fair Labor Standards Act. The plaintiffs claim that they are not subject to the provisions of Section 204 and therefore are entitled to the benefits conferred by Section 7 of the Fair Labor Standards Act dealing with overtime compensation.

In United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345, the Supreme Court construed the scope and coverage of Section 204 of the Motor Carrier Act of 1935 and held that it was "limited to those employees whose activities affect the safety of operation" and that the Interstate Commerce Commission had no jurisdiction to regulate the qualifications or hours of service of any other employees. In Southland Gasoline Company v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244, the Supreme Court construed Section 13(b) (1) of the Fair Labor Standards Act and held that the word "power" therein meant the existence of the power and not its actual exercise, and that such employees as were subject to regulation under Section 204 of

the Motor Carrier Act of 1935 were exempt from the provisions of the Fair Labor Standards Act, even though the Interstate Commerce Commission had not actually exercised its power to regulate qualifications and maximum hours of service of such employees. Accordingly, the present case narrows itself down to the question of whether or not the activities of the plaintiffs were such as affected the safety of operation. If they do affect the safety of operation they are subject to the jurisdiction of the Interstate Commerce Commission and exempt from the provisions of the Fair Labor Standards Act. If they do not affect the safety of operation they are entitled to the benefits of overtime compensation provided by Section 7 of the Fair Labor Standards Act.

Such employees who actually drive trucks obviously are engaged in activities which affect the safety of operation. It appears that at the present time the general classification of drivers has been extended to include drivers, helpers and loaders. Dallum v. Farmers Co-operative Trucking Association, D.C., 46 F.Supp. 785; Epps v. Weathers, 49 F.Supp. 2; Walling v. Silver Bros. Co., 1 Cir., 136 F.2d 168. It also appears well settled at the present time that mechanics who actually perform work on trucks themselves such as inspecting and repairing lights, brakes, transmissions, differentials, motors and steering apparatus are likewise engaged in activities which affect the safety of operation. Wolfe v. Union Transfer & Storage Co., D.C., 48 F.Supp. 855; Robbins v. Zabarsky, D.C., 44 F.Supp. 867; Walling v. Silver Bros. Co., supra. On the other hand, it has been held that the washing of trucks is not such an activity as affects the safety of operation. Hutchinson v. William C. Barry, D.C., 50 F.Supp. 292; and that the unloading of freight at a trucking terminal and the moving it by handcarts to outgoing trucks likewise does not affect the safety of operation. Crean v. Moran Transportation Lines, D.C., 50 F. Supp. 107. In Anuchick v. Transamerican Freight Lines, D.C., 46 F.Supp. 861, it was held that a tarpaulin worker, a porter, a stock-room boy, a night watchman and employees engaged in repairing used or damaged bodies on trucks and trailers, generally classified as "body builders," did not perform services affecting the safety of operation. In that case it was also held that men who were admittedly mechanics, but who were engaged in certain phases of manufacturing or assembling new equipment for trucks to be later put into service, were not engaged in activities which affected the safety of operation. The fact that an employee is a mechanic or a carpenter by trade is not decisive. The true test is what the particular employee actually does rather than what he may be qualified to do. In the present case five of the plaintiffs are mechanics but their services are not performed on the trucks themselves. They work on parts which have been removed from the trucks and which are not replaced in the same trucks from which they were removed. While the result of their work eventually finds its way into the complete mechanism of one of the trucks, yet there is a definite and distinct break in any connection between their work and the safety of operation of the truck which ultimately uses one of the repaired parts. The correct installation of the repaired part and its inspection to determine whether or not it is suitable for use and properly installed is the duty of a different employee and such intervening duties necessarily break any continuity between the repairman in question and the safety of operation. I do not believe that the general concept of "safety of operation" as announced in United States v. American Trucking Associations, supra, includes such indirect and remote activities of the character performed by the plaintiffs in this case, even though ultimately such activities play an indirect part in the safety of operation of the trucks in question.

On the stipulated facts the Court is accordingly of the opinion that the plaintiffs have a cause of action under Section 7 of the Fair Labor Standards Act, and the motion of the defendant to dismiss based upon such a stipulation is overruled.