## Kentucky Transport Co. v. Drake.

Oct. 17, 1944.

Allen, McElwain, Dinning & Clarke and B. C. VanArsdale for appellant.

Jones, Keith & Jones, and Guy C. Shearer for appellee.

Opinion of the Court by Morris, Commissioner—Reversing.

Appellant, defendant below, was during the times involved a corporation operating out of Louisville; a carrier engaging in commercial and freight transportation by means of trucks, both in and out of the state.

Appellee alleged that the business engaged in brought its operations under the terms of the Fair Labor Standards Act of Congress, embodied in 29 U. S. C. A. Sec. 201 et seq. He based his right to recover under the act for alleged overtime labor. He was employed by appellant continuously from September 1, 1938, to June 30, 1940, in "such services as fender and body repairing on transport trucks, tractors and trailers, and some work as metal finisher and welder on the transport trucks used in transporting goods on an interstate and intrastate basis." More particularly describing his duties and services, he alleged that his work consisted of repairing fender and body dents, breaks and other damages to the tractor, trailer and truck bodies, used in inter and intra state transportation, selling and buying. His claim was that from September 1, 1938, to June 30, 1940, he was employed for 998½ hours overtime, and he sets out overtime engagement by monthly periods at the prevailing wage rate. He alleges demand and sues for a total of $774.38, the sum allowable under his union contract; a like sum in liquidated damages and reasonable attorney's fee. Appellee later amended his petition alleging that the transportation was all interstate.

Appellant moved the court to require plaintiff to elect and to make his petition more definite by stating with particularity the facts in respect of (1) engagement in interstate commerce by plaintiff or defendant, and (2) the number of hours, both regular and overtime, during which plaintiff worked on trucks, both in intra and inter state transportation. These motions were overruled, as was general demurrer. An answer denied generally all allegations of the petition save that appellant was a corporation authorized to carry on the business of common carrier; a freight and commercial transporter. Upon trial the jury awarded plaintiff $305.11, plus $50 attorney fee. The court did not give a tendered instruction on liquidated damages, and following the verdict plaintiff moved for judgment non obstante; the

court overruled the motion. Appeal is from judgment entered in conformity with verdict; appellee has been granted cross appeal.

It is the contention of appellant that the court should have sustained its motions for directed verdict, on the ground that the proof showed that Drake's work was such as "affected the safety of operations" of the motor vehicles and hence the provisions of the Fair Labor Act did not apply. That since there was no dispute in the evidence as to the nature of the work, the court should have decided as a matter of law that appellee was not covered by the act and should have dismissed the petition. Again, that appellee had failed to allege or prove that both he and employer were engaged in interstate commerce; that where it appears that both parties are thus engaged the burden is on the employee to show the proportions of time, or overtime consumed in each class, and having failed the petition should have been dismissed.

The determination of the question presented turns altogether on the proof and the application of Federal laws, rules and regulations relating to laborers and wages. The Fair Labor Standards Act, by paragraph a of sec. 207, fixes the schedule of rates which the employer engaged in commerce or the production of goods for commerce shall pay. Paragraph b fixes the number of hours an employee thus engaged may be employed and compensation for labor in excess of the fixed week hours.

The controversy here turns on the application of the facts to subsection (b) of sec. 213, under the heading "Exemptions," which provides: "The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of sec. 304 of Title 49 U. S. C. A." This section, 49 U. S. C. A., sec. 304, places on the Commission the duty (2) to regulate contract carriers by motor vehicles, and empowers it to establish reasonable rules and requirements with respect to uniform system of accounts, records, etc., and "qualifications and maximum hours of service of employees, and safety of operation and equipment," also "reasonable requirements to pro-

mote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees.''

Shortly after the enactment of the Motor Transportation Act the Interstate Commerce Commission on its own motion fixed maximum hours of employees whose functions make such regulations desirable because of safety conditions. Ex Parte No. M. C. C. 23, 'M. C. C. 635-667; United States v. American Trucking Association, 310 U. S. 534, 60 S. Ct. 1059, 84 L. Ed. 1345. The exemption applies to employees whose maximum hours may be controlled by the Interstate Commerce Commission, without regard to whether or not the Commission had acted, the exemption being based on the power of the Commission to regulate. Overnight Motor Transportation Co. v. Missell, 316 U. S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682; Southland Gasoline Co. v. Bayley, 319 U. S. 44, 63 S. Ct. 917, 87 L. Ed. 1244.

Appellee admits in brief that there was no contrariety in the evidence, but insists that it presented a question as to whether or not the work of the employee did or did not affect the safety of operation of appellant's vehicles. Appellant, while agreeing that such is the sole question, contends that the proof, rather than supporting the claim that Drake's work did not affect the safety of operation, showed that it was such, as the act has been construed, as to bring it within the exempting feature of the act. The proof is clear that appellant was engaged in the sole business of transporting goods, in the delivery of commodities under contract with one of the larger chain store concerns, operating about 75 power units and nearly as many semi-trailers. The majority of these were used in Kentucky deliveries, some operated across state lines in Indiana, Illinois and Tennessee. In connection with its business it operated a repair shop adjacent to its main office, where its fleet was serviced and repaired by its employees.

Drake was employed as a mechanic, his application so showed, and his and other proof show him to have been such, and all his work was in repair and readjustment work. He said that his work was chiefly fender and body work on tractors and trucks, which included welding. He was asked on direct examination as to whether or not the work he did affected the ''safe operation'' of the vehicles. He said ''some of them they could and some they could not.'' His idea was that work on trucks

which were "still rolling" was not for safety of operation. Some of the work he thought was rebuilding. On cross-examination he stated he worked on lights, mostly repairing broken ones and putting them in place, sometimes replacing new ones. He worked on fifth wheels, which bear the front end of the trailer, and had "something to do with the safety of operation." He worked on battery boxes, which was for safety in operation; worked on radiators, mostly taking them off for repairs and replacing them; on bolster plates and fish plates to repair frames, generators and brackets "when they broke in two." He also had the job of inspecting fenders, bodies and air lines, which had to do with brakes. He worked on axles after the truck had been in trouble, on flare brackets, frames and springs, and rear view mirror frames. He was under the impression that "body work" was not connected with safety of operation because you could "sit on a box and drive a tractor."

Appellee introduced several employees who had worked with him, who in detail similarly described his duties and work. Two or three witnesses testified that Drake was "a fender and body man," and only worked on the other jobs at odd times. Drake expressed the opinion that three-fourths of the trucks were used in hauling to other states, because they had out of state tags, and of his talks with driver. He also said that his repair work during the period would average about five trucks a day.

Mr. Byrne, manager for nine years, said he knew of Drake's work and described the repair work, of which with such a fleet of trucks and trailers, "there was a great deal." The court refused to allow a reply to a question whether Drake's work concerned the safety of operation, and by avowal he said it did. A former supervisor testified that he knew Drake and his work, and expressed the opinion that all work he did for appellant contributed to the safety of equipment on the road. As we read the proof, aside from a few instances when frames, bodies or couplings were adjusted to meet state requirements, it appears to us that most of the work done was toward safety of operations. And it may be noted that appellee did not undertake to show in working hours how much of his total work was not in interstate commerce or of a character not looking to safe operation. In Tinerella v. Des Moines Transportation

Company, D. C., 41 F. Supp. 798, 799, the court said: "The allegation of the complaint concerning the employment of Ray Chase is that his duties consisted in checking, inspecting, servicing, repairing and generally maintaining defendant's trucks while the same were engaged in interstate commerce. Clearly he was an employee whose duties affected safety of operation." Robbins v. Zabarsky, D. C., 44 F. Supp. 867; West v. Smoky Mountains Stages, D. C., 40 F. Supp. 296.

Both parties rely to some extent on the ruling in Anuchick v. Transamerican Freight Lines, D. C., 46 F. Supp. 861. Appellee, because it is clear that the court in analyzing the labors performed by the various plaintiffs found that part of the time employed in performing the services was such as to take the "employee out of the" Interstate Commerce Commission's jurisdiction. To repeat here the analysis would cover too much space, but in dividing the work into classes the court said that in some instances "part of the plaintiff's activities were manufacturing, part for size, care and safety of the cargo, and part to make a new job complying with the law. We make the distinction between replacing old or broken lights with new. That is repair or maintenance work. We also make distinction between repair work that was completely repair work no matter how extensive the job had to be as in (e) differentiating between that and work that made it possible for defendant to begin its business with that particular piece of work." The court then apportioned such work as was done for safety of operation and not for such purpose. He held that for the weeks (the unit of measurement) the plaintiffs had devoted a "substantial" part of their time to such work as was not classified (by the court) as repair or maintenance work they were entitled to recover, citing Klotz v. Ippolito, D. C., 40 F. Supp. 422.

Both parties also rely upon a memorandum opinion by Judge Miller in the Western (Ky.) District United States Court on June 24, 1944, in Keeling v. Huber Motor Express, F. Supp., upon pre-trial. The Huber Company was engaged in business similar to that of appellee here. In its repair, maintenance and service garage it employed 35 men as mechanics, excepting the seven plaintiffs. The duties of some of these seven men are described as being that of stockkeepers, others caring for and furnishing parts to the mechanics for re-

placements. Some worked on parts to be replaced, and two were grease men. Some of these excepted employees spent over 85 per cent of time in the shops and did no actual work on the trucks, "except occasional jobs." None had anything to do with the installation of parts into the trucks. One of the men spent 85 per cent of his time rebuilding batteries. Another worked on flat or damaged tires. The judge referred to United States v. Trucking Ass'n case, supra (310 U. S. 534, 60 S. Ct. 1069, 84 L. Ed. 1345), which held that the "power" of the commission, whether exercised or not, was "limited to those employees whose activities affect the safety of operation," and that the Commission had no jurisdiction to regulate the hours of service of laborers not engaged therein. The Judge pointed out that the courts had determined that drivers, helpers and loaders were engaged in safety operation, and that in cases cited (Robbins case, supra, and Wolfe v. Union T. & S. Co., D. C., 48 F. Supp. 855, Walling v. Silver Bros. Co., 1 Cir., 136 F. 2d 168), it seemed to be well settled that "mechanics who actually perform work on trucks themselves, such as inspecting and repairing lights, brakes, transmissions, differentials, motors and steering apparatus, are likewise engaged." He also cited cases in which the court had held certain activities were not subject to the orders of the I. C. C. The court concluded that the seven plaintiffs were entitled to go to trial on merits, since the safety of operation as defined did not include indirect and remote activities of the character performed by plaintiffs, though they may ultimately play an indirect part in the safety of truck operations in question.

On the strength of these opinions, and others observed, we are of the opinion that the greater part of appellee's services were such as brought them into the class affecting the safety of operation. We have noted the exception of the time employed in making changes in trucks to conform to the state's regulatory laws. There may be others on close inspection but we are not inclined to search them out. This will be the prerogative of the parties.

The conclusions reached obviate the necessity of discussing the argument that since the evidence showed the work performed to have been directed to safety of operation, the court should have held, as a matter of law, that appellee was not covered by the Act, and we

should direct dismissal, or that the petition should be dismissed because appellee failed to allege and prove facts to show that both he and his employer were engaged in interstate commerce. We think even under the ruling in Preston v. Louis des Cognets & Co., 292 Ky. 646, 167 S. W. 2d 863, the petition in this respect was sufficient. Townsend v. B. & M. R. R. Co., D. C. 35 F. Supp. 938. As we read the cases cited, the contention that where it is made to appear that master and servant are employed in both intra and inter state work, the burden is on the employee to show what proportion of his time or overtime is to be allocated to such work, appears to have been upheld in the des Cognets case; White Motor Co. v. Littleton, 5 Cir., 124 F. Supp. 2d 92; Klotz v. Ippolito, supra; and Schwartz, etc. v. Witmer Grocery Co., D. C., 49 F. Supp. 1003, but they do not hold that upon his failure of proof on the point the petition should be dismissed. The better practice would be for the court to sustain appellant's motion to require appellee to make his petition more definite in this respect. Townsend case, supra.

It is unnecessary to discuss the argument made by appellee on his cross appeal as to the court's failure to assess liquidated damages under the provisions of sec. 216 of Title 29, U. S. C. A., since there is to be retrial. Attention is called to J. F. Schneider & Son v. Justice, 293 Ky. 126, 168, S. W. 2d 591, dealing with this question. Our conclusions require us to sustain appellant's motion for appeal, and to reverse the judgment with directions to grant appellant a new trial consistent herewith.