WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. COMET CARRIERS, Inc.

District Court, S. D. New York.

Nov. 2, 1944.

Douglas B. Maggs, Sol., and Archibald Cox, Associate Sol., both of Washington, D. C., Irving Rozen, Regional Atty., and Robert A. Levitt, Associate Atty., United States Department of Labor, both of New York City, for plaintiff.

Lester Grossman, of New York City, for defendant.

LEIBELL, District Judge.

The Administrator has instituted this action for an injunction to enjoin the defendant from violating the provisions of Section 15(a) (1), (2) and (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 215 (a) (1, 2, 5). It is charged that the defendant is engaged in handling and transporting, in the City of New York, materials and cut goods for ladies' coats and suits from the plants of manufacturers and jobbers to the factories of their contractors to be made into coats and suits, and later handling and transporting the garments

from the contractors back to the jobbers and manufacturers. The Administrator alleges that the defendant in the conduct of its business has been violating the provisions of Sections 7 and 15(a) (2) of the Act in that he has failed to properly compensate his employees for overtime at the rate of time and a half as required by the Act, and in that the defendant has violated Sections 11(c) and 15(a) (5) of the Act by failing to keep accurate and adequate records of the hours and the rate of pay of defendant's employees.

At the trial it was clearly established from the records of the defendant that the defendant had not complied with the provisions of the Act requiring the defendant to keep accurate records. Most of the entries were patently false. Likewise, it was clearly shown that practically all of the defendant's employees worked hours in excess of the maximum hours fixed by the Fair Labor Standards Act. The chauffeurs in defendant's employ were members of a union and the contract between the employer and the union provided for a forty-eight hour week, which was in excess of the maximum hours fixed by Section 7 of the Fair Labor Standards Act. For the excess time over the maximum week hours fixed by the Act, admittedly the defendant's employees were not paid at the rate of time and a half. Defendant's answer pleaded several defenses, but it soon developed in the course of the trial that the main defense would be that the power to fix maximum hours of service of the defendant's employees rested with the Interstate Commerce Commission under Section 204 of the Motor Carriers Act, 49 U.S.C.A. § 304, and that therefore defendant's employees were exempt under Section 13(b) (1) of the Fair Labor Standards Act from the provisions of Section 7, which fixes the maximum hours of employment and requires time and a half for overtime.

The defendant's place of business is a store located at 315 West 36th Street in the garment center of the City of New York. Defendant operates four motor trucks on which it employs four chauffeurs and four helpers. Its employees also include hand truckers and messengers, whose duty will be hereinafter discussed. The truck drivers and their helpers, towards the end of a day, usually call at the office of the manufacturer or jobber, load upon defendant's trucks bolts of cloth or cut goods, shoulder pads, linings and the like, so as to have them ready for delivery to the contractors the following morning. The trucks are driven to a garage and kept there over night. In the morning the driver and his helper deliver to various contractors the materials or cut goods received from the manufacturers and jobbers as indicated above. The driver and helper unload the truck and either carry up to the contractor the materials upon which the contractor is to do his work, or else they move the materials into an elevator in the building and deliver them physically near the work table of the contractor's employees. If the goods have already been cut by the manufacturer or jobber then the work of the contractor is limited to sewing, lining and pressing the goods and turning them out as a garment, such as a lady's suit or coat.

When the contractor has finished his work, the defendant's employees call at his factory, pick up the coats and suits and return them to the particular manufacturer or jobber from whom the material or cut goods had been received. In making this delivery the truck driver and his helper would first take the garments from the racks on which they are hanging in the contractor's factory. If there is an elevator in the building, movable racks holding the garments are rolled onto the elevator and the rack and garments are brought out to the street, and the garments are then hung on racks in the truck of the defendant. If the contractor has no elevator in his building the garments are carried from his factory out to the truck by the chauffeur and helper, and are there hung upon racks in the truck, prior to their transportation to the manufacturer or jobber.

When the truck reaches the loft building in which the manufacturer or jobber is located, the driver and helper as a rule obtain movable racks from the manufacturer or jobber and bring them down to the street level. Then they load the garments from the trucks onto these movable racks, wheeling them back onto the elevator and later into the plant of the manufacturer or jobber.

In the case of cut goods moving from the manufacturer or jobber to the contractor the method of transportation is to pack the cut goods in canvas bags of the defendant so that they will not be soiled or damaged in transit. They are later handled on platform trucks and wheeled into the contractor's factory.

Some times the garments have to be pleated and in that case they are transported from the contractor's factory to other plants where the pleating process is performed. The garments are then brought to defendant's store in the garment center, and from there are delivered to the jobber or manufacturer.

Some of the contractors are located within the garment center, a small section of the Borough of Manhattan, bounded by Broadway on the East, Ninth Avenue on the West, 35th Street on the South and 40th Street on the North. Because the distance the materials or the garments are to be transported is so short and within a limited area, in many instances so-called hand truckers or pushers are employed to convey the materials on movable box trucks or racks, which are pushed along the streets, conveying the cut and uncut goods, linings, etc., from the jobber or manufacturer to the contractor, and then the manufactured garment from the contractor back to the manufacturer or jobber.

Defendant argues that its employees are not engaged in the production of goods for commerce, but that they are engaged in the transportation of goods in interstate commerce. It is urged that since most of the merchandise is manufactured for specific customers located outside the State of New York, the transportation service rendered by defendant is but part of a continuous movement of the merchandise in interstate commerce from the time the garments leave the factories of the contractors. I do not agree with that contention.

Is there in the present case "a practical continuity of movement of the goods until they reach the customers for whom they are intended"? Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460. Do the facts here show "the continuous nature of the interstate transit which constitutes commerce"? It should be noted at the outset that as a rule the manufacturer's or jobber's customers to whom the garment will be sold, are not disclosed when the materials are carted by the Comet Carriers from the manufacturer or jobber to the contractor to be made into garments, or when the garments are carted by Comet from the contractor to the manufacturer or jobber. In the case of some chain stores, Comet carries the garments from the contractors to the warehouse of the chain store company.

The defendant does not deliver the finished garment from the manufacturers or jobbers to their customers. That is done by express companies or by other trucking companies. Comet's work ends when it delivers the garments to the manufacturer or jobber. What he does with the garments—to whom or where or by what means he may ship them, is no concern of Comet's. After the delivery of the garments to the manufacturer or jobber, they are examined, sorted, checked, tagged, slight defects are corrected and then they are packed in cartons for shipment to distant points, or placed on racks or trucks and delivered to customers close at hand. The garments may be in the manufacturer's or jobber's place a few hours or a few days. Some of the garments are manufactured for stock—the great majority for specific customers on orders already received. While the work done at the manufacturers or jobbers, after the garments are brought there from the contractors, may not be classified as "processing", the work nevertheless is necessary in getting the manufactured garments ready for shipment to the customer. It is not a mere ritual or procedure resorted to for the purpose of affecting their journey in commerce. It is not a mere pause in their journey—it is a definite break in the continuity of movement of the goods. Walling v. Jacksonville Paper Co., supra. Their future course is determined by the manufacturer or jobber.

Comet in taking the material to the contractor and in carrying back the garment to the manufacturer, was not engaged in interstate commerce, where the manufacturer and the contractor were in the same state. The journey of the garment in interstate commerce did not commence until it left the loft of the manufacturer or jobber, billed to a customer. The Comet employees were engaged "in the production of goods for commerce"; they were not engaged "in commerce" under Section 3 of the Fair Labor Standards Act, 29 U.S.C.A. § 203. "Commerce" is defined in § 203(b) as follows: "(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

"Produced" is defined in § 203(j): "(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the pur-

poses of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." See Bracey v. Luray, 4 Cir., 138 F.2d 8 and Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

There was, of course, an exception in the case of those employees who on several days a week operated trucks to New Jersey, in carting material from the manufacturer or jobber in New York City to the contractor located in New Jersey, and in bringing back the garments from the contractor in New Jersey to the manufacturer or jobber in New York. On those trips Comet's employees were engaged in interstate commerce. As to those employees there is the issue as to whether their participation in interstate commerce was of such a character that the Interstate Commerce Commission has power to establish qualifications and maximum hours of service, pursuant to the provisions of Section 204 of the Motor Carriers Act, 49 U.S.C.A. § 304. If they are in that class, then they are exempt from the provisions of Section 7 of the Fair Labor Standards Act, pursuant to Section 13(b) (1) of that Act.

Under Section 204 of the Motor Carriers Act, the Interstate Commerce Commission is granted the power—

"(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

"(4a) To determine, upon its own motion, or upon application by a motor carrier, a State board, or any other party in interest, whether the transportation in interstate or foreign commerce performed by any motor carrier or class of motor carriers lawfully engaged in operation solely within a single State is in fact of such nature, character, or quantity as not substantially to affect or impair uniform regulation by the Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy declared in the Interstate Commerce Act. Upon so finding, the Commission shall issue a certificate of exemption to such motor carrier or class of motor carriers which, during the period such certificate shall remain effective and unrevoked, shall exempt such carrier or class of motor carriers from compliance with the provisions of this chapter, and shall attach to such certificate such reasonable terms and conditions as the public interest may require. * * *"

Section 13 of the Fair Labor Standards Act, 29 U.S.C.A. § 213, deals with exemptions. Subdivision (b) provides: "(b) The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; or (2) any employee of an employer subject to the provisions of sections 1–27 of Title 49."

It does not appear that Comet Carriers ever applied for any such exemption. In fact none of its trucks carried Interstate Commerce Commission licenses. Nevertheless, certain of their employees would be within the exemption of Section 13(b) (1) of the Fair Labor Standards Act, if the Interstate Commerce Commission had the power to regulate their maximum hours, even though the Commission had not actually exercised that power. The existence of the power, not its actual exercise, is determinative of the exemption under Section 13(b) (1) above quoted. See Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 S. Ct. 917, 87 L.Ed. 1244.

How extensive must the activities of the employee in interstate transportation be, in order to make the exemption applicable? Some of the leading cases on that point have discussed the percentage of the time of the employee given over to interstate transportation or in the performance of duties relating to its safety. In Hutchinson v. Wm. C. Barry, Inc., D.C., 50 F.Supp. 292, where the employee spent about two-thirds of his time washing cars and the balance as a loader and driver, Judge Wyzanski held that the exemption of Section 13(b), Fair Labor Standards Act, would not apply. But in Richardson v. James Gibbons Co., 132 F.2d 627, where the employee was employed about 25% of his time as a truck driver and 75% as a distributor—operator of an asphalt truck, the Circuit Court of Appeals, Fourth Circuit, held that the em-

ployee's activities came within the jurisdiction of the Interstate Commerce Commission, to establish maxmium hours of service for the employee. The decision was affirmed 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244, but that point was not discussed.

■ In the present case, the testimony as to the extent of the activities of some of defendant's employees in interstate transportation is indefinite and unsatisfactory. That there were such activities has been shown, but the burden was on the defendant to establish its claim that their activities were such that Section 13(b) (1) of the Fair Labor Standards Act exempts the employee from the maximum hour provision of Section 7. Richardson v. James Gibbons Co., supra, and Hutchinson v. Wm. C. Barry Inc., D.C., 50 F.Supp. 292. In an analogous situation the burden of proving "an exemption from his statutory duty" was placed upon the employer. Helliwell v. Haberman, 2 Cir., 140 F.2d 833.

As to truck drivers and helpers—only those who drive trucks across state lines at least one day a week are subject to control by the Interstate Commerce Commission according to the Commission's ruling. The maximum hours fixed by the Interstate Commerce Commission for common or contract carriers would apply to the driver or helper so engaged, but only for the week in which he made a trip in interstate commerce. See opinion of Interstate Commerce Commission—Ex Parte Mc 3 (1940) —23 MCC 1 at p. 39. See, also United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

The Administrator of the Fair Labor Standards Act gives a narrower interpretation to the exemption provision of Section 13(b) (1). In an interpretative Bulletin No. 9—Fifth Revision—October 1943, he defines the scope and applicability of the exemption provided by Section 13(b) (1). I quote the following from the Bulletin:

"2. The scope of the exemption provided in section 13(b) (1) involves the interpretation not only of the Fair Labor Standards Act but also of section 204 of the Motor Carrier Act, 1935. The Act confers no authority upon the Administrator to extend or restrict the scope of the exemption provided in section 13(b) (1) or even to impose legally binding interpretations as to its meaning. This bulletin is merely in-

tended to indicate the course which the Administrator will follow in the performance of his administrative duties until otherwise required by the authoritative rulings of the courts. It is nevertheless to be noted that the Supreme Court has held that the interpretations expressed in bulletins of this Division are entitled to great weight."

\*          \*          \*          \*          \*

"4. (b) It should be noted that any truck driver, drivers' helper, mechanic or loader employed by a common, contract or private carrier, who spends the greater part of his time during any workweek on non-exempt activities (such as producing, processing or manufacturing goods, warehouse or clerical work, or other type of work which does not affect safety of operations) is not within the scope of the exemption contained in section 13(b) (1). It is the opinion of the Division that Congress did not intend that this exemption should be available as a vehicle to exempt employees who spend most of their time in work other than that which forms the basis of the exemption."

■ Although I believe that the Administrator's interpretation is preferable, yet I am constrained to follow the ruling of the Interstate Commerce Commission, because it is expressly within the Commission's jurisdiction to so rule, both under Section 204 of the Motor Carriers Act and under Section 13(b) (1) of the Fair Labor Standards Act. However, there should be a uniform interpretation. It may be expected that the conflict in the rulings of the two public authorities will soon be reconciled.

The defendant's time records and payrolls make no distinction between the time an employee spent in transporting goods to New Jersey and the time he spent in carting goods within this city from manufacturer to contractor and return. As to interstate trucking, all the defendant offered was a schedule, prepared by its accountant, showing the bills for the transportation of coats or materials from jobbers within this city to contractors outside the State. The schedule purported to be an analysis of the amount of interstate business done by defendant and the charges for those services. The witness did not know if the defendant moved the merchandise or had another truckman, Barney, move it. The witness could not say whether the employees of the defendant handled all the merchandise Barney transported or which employee handled any part of it. At

the most, the interstate trucking business of the defendant did not exceed 10½% of defendant's gross business for any one year.

This much however has been established as a fact, in respect to the activities of the chauffeurs and helpers—each one of them did not make an interstate trip in every week of the period involved in this suit. As to some of the weeks some of them did make an interstate trip. As to the weeks in which they did not make a trip in interstate transportation, the provisions of Section 7 of the Fair Labor Standards Act would apply, and as to those weeks defendant has violated that section of the Act.

■ Defendant's hand truckers or pushers, who move box-shaped contrivances on wheels in the garment center are engaged in the production of goods for commerce. Kirschbaum v. Walling, supra; Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320. But they are not employed on motor vehicles nor do their functions as employees affect or relate to the safety of operation of the motor vehicles in interstate commerce. (United States v. American Trucking Ass'ns, supra) They are not subject to Section 204 of the Motor Carriers Act.

The records of the defendant were in many instances false. They indicated, for instance, that certain employees were paid on an hourly basis, with an occasional extra sum for overtime, whereas in fact the employees were on a weekly basis. Defendant violated Section 11(c) and Section 15(a) (5) of the Fair Labor Standards Act.

■ The Administrator has shown that an injunction should issue herein under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217. The terms of the injunction will be in accordance with the Conclusions of Law which I am filing herewith together with my Findings of Fact.

Settle decree on two days' notice.