WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v. HUBER & HUBER MOTOR EXPRESS, Inc.

No. 827.

District Court, W. D. Kentucky, Louisville Division.

Sept. 20, 1946.

William S. Tyson, Acting Sol., and Jeter S. Ray, Asst. Sol., both of Washington, D. C., Glenn M. Elliott, Regional Atty., of Nashville, Tenn., George W. Jansen, Supervising· Atty., of Washington D. C., and David V. Manker, Atty., of Nashville, Tenn., all of Department of Labor, for plaintiff.

Stanley B. Mayer, of Louisville, Ky., David Axelrod, of Chicago, Ill., and Roland Rice, of Washington, D. C., for defendant.

MILLER, Circuit Judge.

This action was brought by the plaintiff, Administrator of the Wage and Hour Division, under Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219, to restrain the defendant from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Act, 29 U.S.C.A. §§ 215(a) (2) and 215(a) (5). Those sections provide that it shall be unlawful for any person to violate the provisions of Section 6 or Section 7 of the Act, which relate to minimum wages and maximum hours, or to violate any of the provisions of Section 11(c) of the Act which require the making and keeping of records of employees with respect to wages, hours and other conditions and practices of ·employment. The complaint alleges that the defendant has violated provisions of Section 7 of the Act in failing to pay certain of its employees overtime compensation as required by the Act, and the provisions of Section 11(c) of the Act in failing to make and preserve adequate and accurate records as required by the Act and regulations of the Administrator. The defendant admits that the employees involved are engaged in interstate commerce and are not being paid the overtime compensation required by the Act. It contends, however, that such employees are exempt from the provisions of the Act by reason of Section 13(b) (1) thereof, which provides that Section 7 of the Act shall not apply with respect to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act, 49 U.S.C.A. § 304. The defendant denies the plaintiff's claim that it has violated the record-keeping provisions of the Act. At the trial the plaintiff conceded that any violations of the record-keeping provisions of the Act were minor, and upon defendant's assurance that any deficiencies would be corrected upon being called to its attention, that phase of the case was eliminated by agreement, and no evidence was heard on that point.

## Findings of Fact.

The defendant, Huber and Huber Motor Express, Inc., is a Delaware corporation, having its principal office, place of business, warehouse and garage at 970 South Eighth Street, Louisville, Kentucky, and is engaged in doing business in Kentucky, Tennessee, Indiana, Illinois and Georgia as a common carrier in transporting and delivering goods in interstate commerce. It employs approximately 300 employees in and about its place of business in Louisville, Kentucky, and elsewhere, in so operating.

Both outgoing and incoming freight handled by the defendant is handled on the dock at the defendant's terminal, which is approximately 250 feet long with about 25 doors on each side. The usual procedure in handling such freight is as follows: In the morning 50 or 60 trucks will be backed in on the lot. The first objective is to get the freight off of those trucks, and the efforts of a whole crew, regardless of title or name, are put to work unloading that freight. Some of this freight has to go on city pickup trucks for delivery in the city. Some of it goes into various interchange bins for various connecting lines to pick up. Perishable freight is to be reloaded on trucks that go beyond Louisville, particularly South and to Lexington. As the crew unloads the semi-trailer some of the men that are unloading will go out on the city

pick-up trucks with miscellaneous loads, with helpers where it is necessary. The same men that unload the semi-trailer will load a city pick-up truck. In some instances there may be part of a load destined for another city on the backend of a trailer. That part is taken off and two men of the crew, maybe a dock man and a checker, will take that truck out into the city and unload the Louisville freight remaining in the trailer at the various places of delivery. Often before they return to the dock they are notified to pick up freight at other places in the city, and in such instances they go by the place designated and load freight in the trailer before they return to the dock. In many instances a trailer will be unloaded next to an empty or semi-empty trailer destined for another city, and the same men that unload the inbound truck will in a continuous operation load freight into the outgoing truck, without it being necessary to wheel the freight into the warehouse or to deposit it for accumulation on the dock. At other times freight is unloaded and accumulated in spots on the dock until it can be wheeled to and unloaded into an outbound truck placed at another point on the dock. The work day is roughly divided into the following parts— one part of the day for unloading, another part of the day loading freight in the city, and picking up freight, and at night every one loading outbound trucks to get the trucks out onto the road. It takes longer to load a truck than to unload one, because each piece in loading has to be placed properly so that the weight will be evenly distributed and care must be exercised that the trailer is not overloaded. An employee called a checker is in charge of the crew. He supervises the loading and is responsible for the truck being properly loaded. His first duty is to go into the trailer himself to see that the body of the trailer is in proper condition with no holes in the floor, sides or top. He watches to see how the loaders are placing the freight, and for freight of a dangerous character such as acids, batteries, alcohol, small arms or ammunition. If any accident happens on the highway due to improper loading the checker is the employee held responsible therefor. His name appears on the manifest so that he can be immediately identified. A crew consists of three or four employees in addition to the checker, consisting of two or three wheelers and one loader on outbound freight and a breaker on inbound freight. The number of wheelers usually varies during the day. In the morning a crew may have three or four wheelers; by noon it might have two; and in the evening it might go back to four again. The defendant works from five to seven crews. A wheeler is a man who wheels freight from an inbound truck into the warehouse or to another truck or to a spot on the dock, or who wheels outgoing freight from where it is located to the outgoing truck. A wheeler will wheel freight right into the trailer itself and at times will there turn it over to a loader or stacker or in many instances load or stack himself or assist in so doing. None of the dock employees work exclusively in any one classification such as giving his entire time to unloading or his entire time to wheeling. Each of them engages in two or more different types of work. There is a certain amount of freight at the dock that has to be handled in the course of a day's work and everybody has to pitch in and get it done. As a practical matter it is impossible to state the proximate time that one of the dock men spends on loading compared to unloading and wheeling in any particular day. It is controlled to a large extent by the flow of freight at the terminal, which can not be controlled. There may be a rush of freight in one direction during one week and in a different direction in the following week. If the volume is light on the south there is a lot of loading to do to the north and vice-versa. Seasonable market changes also play a part. An employee may spend 80% of his time in one week in loading, and in the following week the same man may spend 80% of his time in unloading. The same man that might be checking an inbound load in the morning may probably be on a road truck, picking up freight to go out of town in the afternoon. About one-third or one-fourth of the incoming freight will be unloaded and simultaneously loaded into an outgoing trailer parked alongside of it. A majority of the freight handled goes from truck to truck

rather than from truck to warehouse. The handling of freight on the dock is a continuous operation, in that the same crew that unloads a trailer or breaks bulk at a terminal spots the freight at points of advantage over the dock, so that it can be reloaded into trucks going to specific destinations. As soon as a trailer is unloaded, the crew will start to load it. The proper loading of a truck directly affects the safety of its operation on the highway; unloading freight from a truck and wheeling freight either from an incoming truck or to an outgoing truck does not affect the safety of operation of the truck.

B. H. Koetter is employed by the defendant as a checker. He works with M. R. Norris, both of them performing the same type of duties. Freight in a truck which is being unloaded is stacked high. The man who unloads it divides it and places it in small piles so a wheeler can get to it and take it to the right destination is called a breaker. Koetter and Norris spend about fifty percent of their working time breaking freight and the other fifty percent in checking freight. Their duties as a checker consist chiefly in merely designating the truck or place to which the inbound freight is to be taken. Although they pitch in and help load when the occasion requires it, yet the actual time spent by them in loading or wheeling is very small. C. H. Aldrich is employed by the defendant as a checker. Ninety percent of his time is spent in checking freight that is being unloaded. The other ten percent of his time is being spent in checking freight that is being loaded and general jobs of assistance to other workers. C. V. Derr, Sr. is employed by the defendant as a checker. He works with two other employees named Rosenberg and Campbell. Derr and Rosenberg perform the same type of services, Derr breaking one load and Rosenberg checking it and then Rosenberg breaking one load and Derr checking it. Campbell works as the wheeler. In checking Derr and Rosenberg direct the wheeler where to take the freight, but generally they do not direct his activities in how it is loaded after it reaches a truck. Derr and Rosenberg spend approximately an hour a day in actually loading

freight in a trailer, and approximately 25% of the rest of their time in checking freight that is being loaded. The remainder of their time is spent generally in checking freight that is being unloaded. W. K. Fouts is employed by the defendant as a night checker. From about 10:30 a.m. to 4:00 p.m. he works in wheeling, loading and breaking freight. In checking outgoing freight he supervises the loading of the trailer. He spends approximately two hours a day actually loading and from three to four hours a day in checking the loading. C. M. Holbert is employed by the defendant as city dispatcher. He dispatches trucks on routes for the purpose of picking up and delivering freight, selecting and directing for purposes of economical operation the shortest route in his opinion. He spends the greater part of his time in the week in dispatching, with four to five hours each week spent in checking, about two hours each week in loading and about one and one-half hours a week in driving. L. J. Engle works for the defendant in charge of city deliveries, getting freight bills ready for city delivery and seeing that freight is in the right bins for the drivers to deliver. He spends about four hours a day in this type of work, about two or three hours a day in wheeling, about one-half an hour in taking care of the office when other people are absent and about an hour and one-half in unloading pick-up trucks. At times he may spend from two to three hours twice a week as a driver's helper.

The following men are employed by the defendant in the Louisville garage: James K. Keeling, Bosse Priestly, Koerber and Jacoby as garage mechanics, Otto Mueller as battery repairman, John R. Campbell as tire repairman, and George C. Jackson as shop foreman. The parties have stipulated that testimony concerning the duties of these men as given in Keeling v. Huber and Huber Motor Express, Inc., No. 632, D.C.W.D.Ky., Louisville Division, may be taken as the testimony in this case. That testimony shows the facts to be as stated in the opinion of this Court in Keeling v. Huber & Huber Motor Express, Inc., D.C., 57 F.Supp. 617, and such facts are adopted as findings in this action.

## Conclusions of Law.

The legal questions involved herein are the same as are presented and discussed in Walling, Administrator v. Silver Fleet Motor Express, Inc., D.C.W.D.Ky., 67 F.Supp. 846 in which findings of fact and conclusions of law are handed down at this same time. Reference is made to the conclusions of law in that action for a discussion of the legal principles involved.

▮ Such employees of the defendant in this case who devote a substantial part of their time during the work week to work which directly affects the safety of operation of vehicles on the highway are exempt from the provisions of the Fair Labor Standards Act by reason of Section 13(b) (1) of that Act 29 U.S.C.A. § 213(b) (1). United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Walling v. Morris, 6 Cir., 155 F.2d 832; Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337, 340; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582, Drivers, drivers' helpers, loaders and mechanics who actually perform work on the trucks themselves are engaged in work which directly affects the safety of operation. Employees engaged in wheeling and unloading are not engaged in work that directly affects the safety of operation. Keeling v. Huber & Huber Motor Express, Inc., D.C., 57 F.Supp. 617, Report, Maximum Hours of Service of Motor Carrier Employees, 28 M.C.C. 125, 132, 133. A loader includes a checker if the checker supervises the loading of the trailer and is responsible for the proper loading. A large proportion of the defendant's dock men devote a substantial part of their time to work which directly affects the safety of operation, even though they may also during any particular week work at wheeling and unloading. With respect to such employees the defendant has not violated the provisions of Section 7 of the Fair Labor Standards Act. Richardson v. James Gibbons Co., 4 Cir., 132 F.2d 627, affirmed 319 U.S. 44, 63 S.Ct. 917, 87 L. Ed. 1244; Walling v. Comet Carriers, 2 Cir., 151 F.2d 107. However, the defendant has violated the provisions of Section 7 of the Act in the cases of the following employees: B. H. Koetter, M. R. Norris, C. H. Aldrich, C. V. Derr, Sr., Rosenberg, Campbell, C. M. Holbert, L. J. Engle, James K. Keeling, Bosse Priestly, Koerber, Jacoby, Otto Mueller, John R. Campbell, George C. Jackson and the four or five employees engaged in greasing and gasing. By reason of such violations the plaintiff is entitled to an injunction against further violations of that section of the Act. See Bowles v. May Hardwood Co., 6 Cir., 140 F.2d 914, 916. Any subsequent contempt proceedings thereunder should be controlled, however, by the views expressed herein pertaining to the nature and extent of exempt activities until changed or modified by higher authority.

Counsel for plaintiff will tender judgment for entry.