**Leslie A. GRIFFIN, Plaintiff,**

v.

**CONSOLIDATED FOODS CORPORATION t/a Hanes DSD and L'Eggs, Defendant.**

**No. C–C–83–703–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 27, 1984.

Shelley Blum, Sheely & Blum, Charlotte, for plaintiff.

John R. Wester and Brent A. Torstrick, Fleming, Robinson, Bradshaw & Hinson, Charlotte, for defendant.

## FINAL ORDER OF DISMISSAL

McMILLAN, District Judge.

### 1. *Background.*

Plaintiff Leslie Griffin was employed by defendant Consolidated Foods as a route sales representative from 1973 until 1981. On August 24, 1983, plaintiff initiated this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* seeking money allegedly owed her by defendant as overtime compensation for work performed in excess of statutory maximum hours. Defendant has moved the court for summary judgment on grounds that plaintiff's employment fell within the "motor carrier's exemption" from the overtime provisions of the Fair Labor Standards Act. A hearing was held on defendant's motion on March 5, 1984.

The Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1), provides that employers may not require employees covered by the Act to work in excess of forty hours per week unless such employees are compensated at no less than one and one-half times their regular hourly rate. However, 29 U.S.C. § 213(b) (the "motor carrier's exception") provides that "[t]he provisions of § 207 of this title shall not apply with respect to—(1) any employee with respect to whom the Secretary of Transportation may prescribe requirements for—(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operations." 49 U.S.C. § 3102(b)(2). The term "motor private carrier" as used in 49 U.S.C. § 3102 is defined in 49 U.S.C. § 10102(15) as "a person, other than a motor carrier, transporting property by motor vehicle when—

(A) the transportation is as provided in section 10521(a)(1) and (2) of this title [*i.e.,* in interstate commerce];

(B) The person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise."

The focus of the inquiry in determining whether plaintiff's employment as a route sales representative was exempt from the requirements of the FLSA is whether the Secretary of Transportation had the *power* to establish qualifications and maximum hours of service for plaintiff's job, *Brennan v. Schwerman Trucking Co. of Virginia,* 540 F.2d 1200 (4th Cir.1976); this involves an analysis of the facts to determine whether plaintiff's job required her, as a motor vehicle driver, to transport goods in interstate commerce. If plaintiff's job falls within the category of employment which the Secretary of Transportation has the power to regulate, then the provisions of the FLSA are not applicable to plaintiff's employment, regardless of whether the Secretary has chosen to exercise that power. *Morris v. McComb,* 332 U.S. 422, 434, 68 S.Ct. 131, 136, 92 L.Ed. 44 (1947); *Southland Co. v. Bayley,* 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244 (1943).

### 2. *The Facts.*

The facts of this case are not in dispute. Defendant is in the business of manufac-

turing, marketing, and distributing L'Eggs panty hose. Plaintiff's job responsibility was to service defendant's accounts at retail establishments in the Charlotte, North Carolina, area by ordering, receiving and delivering defendant's product in a van provided by the company. The panty hose are manufactured in North Carolina, South Carolina, and New Mexico. They are then shipped to Alleo, North Carolina, where they are packaged with plastic manufactured in Texas, and cardboard manufactured in Virginia. The packaged product then moves from its point of assembly to defendant's "star" warehouse in Winston-Salem, North Carolina, and from there it is distributed to defendant's branch locations throughout the United States.

Defendant maintains two warehouses in Winston-Salem. From its star warehouse, defendant distributes its product to branch warehouses throughout the country; from its branch warehouse in Winston-Salem, defendant distributes its product to individual route drivers. The product remains an average of two weeks at the star warehouse before shipment to the branch warehouses, and remains an average of an additional two weeks at the branch warehouse in Winston-Salem before it is placed on trucks for delivery to retail stores. At the time of plaintiff's employment by defendant, the product delivered to stores in the Charlotte area originated from defendant's Winston-Salem branch. [These stores are currently the responsibility of the Columbia, South Carolina, branch.]

Defendant designs individual delivery routes, such as the one managed by plaintiff during her employment, with an eye toward developing a grouping of customer accounts that can be serviced by one route sales representative in a forty-hour week. No regard is given to city, county, or state boundaries as determining factors in the designing of routes. Thus, approximately twenty per cent of defendant's routes nationally cross state lines, and approximately thirty per cent of defendant's routes in the North Carolina and South Carolina area cross state lines. Defendant periodically re-allocates retail accounts within delivery routes, and alters the configuration of delivery routes. These route changes may result in the switching of routes between branches and regions, or the switching of branches from one region to another.

Defendant has tendered as evidence in support of its motion a current route sales map for the North Carolina and South Carolina areas. The map shows that two of the three routes serving the Charlotte, North Carolina, area also cross over into South Carolina. The uncontroverted evidence is that an individual route sales representative who works near a state boundary can reasonably expect to service retail stores in both states, or to cross state lines, as part of her work.

At the time that she was employed by defendant, plaintiff serviced only stores located in North Carolina, while she lived nearby in South Carolina. Her job responsibilities consisted of ordering the product, picking it up and loading it into the van provided her by the company, and transporting it to the stores that she serviced. At the retail stores, plaintiff inventoried, replenished, and arranged the stock of panty hose. After performing these duties, plaintiff was required to obtain the approval of the management of the stores she serviced before placing additional orders with defendant; plaintiff did not handle any payments for the product she delivered. In addition to delivering defendant's product and servicing her accounts, plaintiff also spent a substantial portion of her time doing required paper work at her home.

3. *Application of the motor carrier's exemption to this case.*

The fact that plaintiff's home was located in South Carolina, and that she was compensated for gasoline and time spent driving her van across state lines during the day in order to perform paperwork, will not control the decision of this matter. If the motor carrier's exemption were otherwise inapplicable to the facts of this case, plaintiff's choice of residence would not

shield defendant from the long-standing requirements of the FLSA. Nevertheless, the court finds that plaintiff's employment fell within the motor carrier's exemption from the FLSA, and that summary judgment is warranted.

First, it is beyond question that, as the driver of a motor vehicle, plaintiff was engaged in activity affecting the safety of defendant's operations. The motor carrier's exception to the FLSA is grounded in the premise that the transportation of goods by motor vehicle is a hazardous activity deserving of special regulation. *Levinson v. Spector Motor Service*, 330 U.S. 649, 657–59, 67 S.Ct. 931, 935–37, 91 L.Ed. 1158 (1947).

■ Second, defendant Consolidated Foods was engaged in the transportation of goods in interstate commerce. Whether or not plaintiff was required to cross state lines with her van as part of her employment, the goods she delivered were being transported "between a place in ... a State and a place in another State." 49 U.S.C. § 10521(a)(1)(A). Where a driver's activities constitute part of a continuous or through movement of freight from points outside a state to retail stores within, the motor carrier's exemption is applicable to those activities regardless of whether they are carried out solely within one state. *Southland Corporation (Cabell's Dairy Division) v. Shew*, 248 F.Supp. 12, 15 (N.D. Tex.1965); *Beggs v. Kroger Co.*, 167 F.2d 700 (8th Cir.1948); *Hodgson v. Royal Crown Bottling Company*, 324 F.Supp. 342, 347 (N.D.Miss.1970). The fact that the goods came to rest in a warehouse on the way to their ultimate destination is immaterial where "[t]he warehouse is merely a convenient instrumentality for the division of the shipments coming to it and the continuation of the movement of each part to the retail stores." *Southland Corporation v. Shew, supra*, at 15.

In this case, defendant manufactures its product in three states. The finished product is packaged in North Carolina, and is then shipped for distribution throughout the United States. Defendant maintains control over the product from its point of manufacture to its ultimate resting place on a retail display rack.

Plaintiff contends that several circumstances should lead the court to conclude that defendant's product is taken out of the stream of interstate commerce once it enters North Carolina. First, plaintiff argues that through the process of packaging in Alleo, North Carolina, the product is substantially altered, and has "come to rest" on its way to other states. *Baird v. Wagoner Transportation Company*, 425 F.2d 407, 412 (6th Cir.1970). Second, while *defendant* ships its product nationwide from its star warehouse in Winston-Salem, *plaintiff* delivered the product only to points in North Carolina from the branch warehouse located in that same city.

Either of these facts, under different circumstances, might lead the court to conclude that plaintiff's activities in transporting defendant's products solely *intrastate* fell outside the motor carrier's exemption from the FLSA.

■ In this case, however, thirty per cent of defendant's delivery routes within the State of North Carolina cross state lines, and those routes are assigned indiscriminately among defendant's route sales representatives. This percentage of activity that clearly constitutes the transportation of goods in interstate commerce is sufficient to provide the Secretary of Transportation with the power to regulate maximum hours of service for *all* of defendant's drivers. *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (motor carrier's exemption applies where four per cent of employer's business, indiscriminately assigned to drivers, is in interstate commerce); *Brennan v. Schwerman Trucking Company of Virginia*, 540 F.2d 1200 (4th Cir.1976) (where employer transports no products in interstate commerce, but holds itself out as available to perform such cartage, exemption applies).

■ Because the Secretary of Transportation has the power to establish qualifications and maximum hours of service for

defendant's route sales representatives who service defendant's retail sales accounts in North Carolina, such employment falls within the motor carrier's exemption of the Fair Labor Standards Act, 29 U.S.C. § 213(b)(2). Accordingly, there is no genuine issue of material fact left to be decided in this case.

Defendant's motion for summary judgment is HEREBY ALLOWED and this case is DISMISSED.