Paul FRIEDRICH; Roger Hall; Tom Harahan; Robert Mazzarella; Richard Omvig; Roseanne Saunders; Richard Schaefer; Jack Wasneski; Steve Zizza, Appellants,

v.

U.S. COMPUTER SERVICES a/k/a/ U.S. Computer Systems d/b/a Cable Data.

No. 92–1002.

United States Court of Appeals, Third Circuit.

Argued July 10, 1992.

Decided Sept. 9, 1992.

Denis M. Dunn (argued), Petrikin, Wellman, Damico, Carney & Brown, Media, Pa., for appellants.

Barnett Satinsky (argued), Alexia Kita Blake, Anne Marie Ciesla, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellee.

Before: SLOVITER, Chief Judge, STAPLETON, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises an interesting question of entitlement to overtime compensation arising out of the interfacial tensions of two federal regulatory statutes, the Motor Carrier Act of 1935 (MCA), Act of August 9, 1935, c. 498, 49 Stat. 543 and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 209, 216 (West Supp.1992). The plaintiffs are a group of field engineers previously employed by U.S. Computer Services, d/b/a CableData (CableData) seeking overtime compensation pursuant to the FLSA. The plaintiffs frequently traveled interstate as part of their job duties, carrying tools, component parts, and equipment in order to install, maintain, or repair customers' computers. The district court held that the plaintiffs were exempt from the FLSA's overtime compensation requirements pursuant to the FLSA's Motor Carrier Act exemption. The plaintiffs appealed and we affirm.[1]

### I.

The material facts are not in dispute. CableData is a privately-owned corporation headquartered in California. It provides computer hardware and software, installa-

---

**1.** Subject matter jurisdiction of this controversy exists under section 16(b) of the FLSA and under the provisions of 28 U.S.C. § 1337 relating to a civil action arising under an Act of Congress regulating commerce and 28 U.S.C. § 1331. There is diversity of citizenship between the parties.

tion, maintenance, and repair service of its computer equipment to its customers engaged in the cable television business. The plaintiffs were assigned to the company's Northeast Region Office, located in Broomall, Pennsylvania. This office regularly services customers located in Pennsylvania, New York, New Jersey, Delaware, Maryland, Washington, D.C., Virginia, West Virginia, and other states as needed.

The primary duties of the plaintiffs were to provide technical expertise to CableData's customers and to perform installation, preventive maintenance, diagnostics, and repairs on the customers' computer hardware. The plaintiffs routinely traveled to customer sites, both in and out of Pennsylvania, in order to perform these services. If the customer sites were within four to six hours' drive, the field engineers drove their personal vehicles and transported their tool kits, replacement parts, and equipment. For customer sites located at a greater distance, the field engineers traveled by air and drove rental automobiles from the airport.

The plaintiffs filed a complaint against CableData seeking overtime compensation allegedly due pursuant to the FLSA, the Pennsylvania Minimum Wage Act of 1968 (PMWA), 43 P.S. §§ 333.101–333.115 (West Supp.1992), and the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. §§ 260.1–260.11a (West Supp.1992). CableData filed a motion for summary judgment under the MCA, and the plaintiffs filed a cross-motion for summary judgment. The court granted summary judgment in favor of CableData with respect to the plaintiffs' FLSA claims and subsequently certified the judgment pursuant to Federal Rule Civil Procedure 54(b).[2]

In granting summary judgment, the court concluded: (1) the plaintiffs were subject to the MCA exemption from the FLSA's overtime compensation requirements; (2) the United States Department of Transportation (DOT) retained the authority to establish maximum hours of employment for the plaintiffs, notwithstanding the lightweight vehicle exemption promulgated by the DOT; and (3) the court was prohibited from reaching a contrary result in the absence of Congressional action limiting the DOT's power to regulate motor private carriers by passenger automobile. The plaintiffs appealed and the Secretary of Labor filed an *amicus curiae* brief.[3] We have jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.

To obtain a summary judgment, the proponent of the motion has the initial burden of identifying evidence, from the sources enumerated in Federal Rule Civil Procedure 56(c), which demonstrates the absence of a genuine issue of material fact and which establishes the movant's entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). When confronted with a properly supported motion for summary judgment, the opposing party is required to produce, from the same sources enumerated in Rule 56, contrary evidence which would support its position. *Id.* at 250, 106 S.Ct. at 2511. In reviewing a grant of summary judgment, we must draw all possible inferences from the record in the light most favorable to the party opposing the motion. *Bechtel v. Robinson*, 886 F.2d 644, 647 (3d Cir.1989).

**2.** The court reserved decision with respect to the plaintiffs' state law claims under the PMWA and the WPCL. Also not before this court is the district court's denial of the plaintiffs' motion for preliminary injunction, alleging retaliation by CableData in violation of the FLSA, 29 U.S.C. § 215(a)(3), and the district court's denial of CableData's motion for summary judgment concerning the fluctuating workweek defense.

**3.** Although the brief is helpful, the DOT, not the United States Department of Labor (DOL), is the agency charged with the administration and in-

terpretation of the MCA. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649, 676–77, 67 S.Ct. 931, 945, 91 L.Ed. 1158 (1947). The DOL cannot interpret the DOT's power under the MCA to expand the jurisdiction of the FLSA. *Id.* at 684, 67 S.Ct. at 948. Deference should be accorded to the reasonable construction of the agency to which Congress entrusted responsibility, and not to another agency whose interest is collateral. *Federal Labor Relations Authority v. United States Dep't of Navy*, 966 F.2d 747, 764 (3d Cir.1992).

Congress enacted the MCA in 1935, to promote efficiency, economy, and safety in the rapidly burgeoning motor transportation industry. *See United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 538–39, 60 S.Ct. 1059, 1061–62, 84 L.Ed. 1345 (1940). To advance these goals, the MCA gave the Interstate Commerce Commission (ICC) authority to establish requirements for recordkeeping, safety of operation, qualifications, and maximum hours of work for "common carriers" and "contract carriers" by motor vehicle. *See* 49 U.S.C. § 304(a)(1) & (2) (repealed). The Act also gave the ICC similar regulatory power over employees of "private carriers" by motor vehicle if the ICC found that such requirements were necessary to promote the safety of operation. *See id.* at § 304(a)(3) (repealed).

■ In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours. *See Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985). The FLSA required employers to compensate such employees at a minimum of one and one-half times their standard hourly wages for time worked per week in excess of forty hours. *See* 29 U.S.C. § 207(a)(1). Congress ensured that regulatory jurisdiction under the MCA and the FLSA would not overlap by providing that the FLSA did not apply where the ICC already had power to set maximum hours. *See Levinson*, 330 U.S. at 661–62, 67 S.Ct. at 938. Specifically, the FLSA exempted from its overtime requirements "any employee with respect to whom the [ICC] has power to establish qualifications and maximum hours of service pursu-

ant to the provisions of section 304 of Title 49." *See* 29 U.S.C. § 213(b)(1). It is the employer's burden to affirmatively prove that its employees come within the scope of the overtime exemption, and any exemption from the Act must be proven plainly and unmistakably. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir.1991) (citations omitted).

In 1966, Congress transferred the authority to regulate under section 304 of the MCA from the ICC to the DOT. *See* Act of Oct. 15, 1966, P.L. 89–670, § 6(e)(6)(C), 80 Stat. 939; 49 U.S.C. § 1655(e)(6)(C). In 1983, Congress repealed section 304 and recodified the section without substantive change as 49 U.S.C. § 3102. *See* Act of Jan. 12, 1983, P.L. 97–449, § 7(b), 96 Stat. 2444. Section 3102 gives the DOT authority to regulate "motor carriers"[4] and "motor private carriers."[5] Motor private carriers are those that are neither common nor contract carriers, and that (1) transport property by motor vehicle in interstate commerce; (2) are the "owner, lessee, or bailee of the property being transported"; and (3) transport the property "for sale, lease, rent, or bailment, or to further a commercial enterprise." *See* 49 U.S.C. § 10102(16).

Preliminarily, the plaintiffs present two statutory-based claims, contending that CableData does not fit within the plain language of the MCA exemption. First, they assert that the MCA exemption from the FLSA overtime requirements does not apply to motor private carriers because section 3102(a)(1) applies to transportation "described in sections 10521 and 10522 of this title" and these sections speak only of "motor carriers," which are later defined to mean motor common carriers and motor contract carriers, 49 U.S.C. § 10102(13).

---

**4.** "Motor carriers" include both "motor common carriers" and "motor contract carriers." *See* 49 U.S.C. § 10102(13). Motor common carriers are those that hold themselves out to the general public to provide motor vehicle transportation for compensation. *Id.* at § 10102(14). Motor contract carriers are those that provide transportation of persons or property in accord with continuing agreements. *Id.* at § 10102(15).

**5.** Section 3102 provides in part:

(b) The Secretary of Transportation may prescribe requirements for—

(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and

(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

*See* 49 U.S.C. § 3102(b).

However, section 3102(a)(1) simply refers to sections 10521 and 10522 for a description of the type of transportation subject to the DOT's jurisdiction, that is, interstate transportation. *See, e.g., Griffin v. Consolidated Foods Corp.*, 587 F.Supp. 921, 922 (W.D.N.C.1984), *aff'd,* 771 F.2d 826 (4th Cir.1985). The plaintiffs' proffered interpretation would render section 3102(b)(2) meaningless.

Second, the plaintiffs argue that the DOT does not have the power to regulate them because they were engaged in a business other than transportation and the transportation in question was in furtherance of their primary business of servicing computer equipment. Under the "primary business test," the ICC lacks jurisdiction over the transportation of property by motor vehicle by a person engaged in a non-transportation business when the transportation is within the scope of and furthers the primary business of such person. 49 U.S.C. § 10524(a).

■ Congress adopted section 10524(a) because of a proliferation of "buy-sell" agreements whereby carriers attempted to avoid ICC regulation. *See Ryder Truck Lines, Inc. v. United States,* 716 F.2d 1369, 1373 n. 4 (11th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 181 (1984). By purchasing the goods to be transported and then selling them upon reaching their destination, the carriers avoided ICC rate and licensing requirements as well as federal excise taxes. *Id.* Section 10524(a) has no application in this case. The section merely exempts motor private carriers from the licensing, permit, and certificate requirements imposed upon motor carriers by the ICC pursuant to 49 U.S.C. §§ 10921–10935; it does not serve to

deprive the DOT of its power to regulate the qualifications and maximum hours of service of employees of motor private carriers pursuant to 49 U.S.C. § 3102(b)(2). *See American Trucking Ass'ns,* 672 F.2d at 851 (common and contract motor carriers are subject to ICC regulation but motor private carriers are exempt from such regulation). The MCA exemption thus applies independent of the ICC's jurisdiction over a motor private carrier.

■ The record shows that the plaintiffs transported property by motor vehicle in interstate commerce, that CableData owned the property transported, and that the plaintiffs transported the property to further CableData's commercial enterprise.[6] Therefore, the plaintiffs literally fell within the MCA exemption to the FLSA. The plaintiffs argue, however, that the DOT has waived its regulatory power under the MCA exemption because it has not sought to regulate operations such as CableData's.

In 1984, Congress enacted the Motor Carriers Safety Act (MCSA), 49 App. U.S.C. § 2501 *et seq.,* which directed the DOT to issue various regulations to further safety in the operation of "commercial motor vehicles." Commercial motor vehicles are those vehicles weighing over 10,000 pounds, designed to transport more than 15 passengers, or used in the transportation of hazardous materials. *Id.* at § 2503(1); 49 C.F.R. § 390.5. In response to the MCSA, the Federal Highway Administration (FHWA) amended the Federal Motor Carrier Safety Regulations (FMCSR), *see* 49 C.F.R. § 390.1–390.37 (Nov. 15, 1988).[7] The DOT regulations do not apply to the

6. The plaintiffs contend that the MCA exemption would apply only when they personally transported equipment across state lines by motor vehicle. However, the parts and equipment used by the plaintiffs were distributed in a company-wide interstate network system. Under the "continuity of movement" principle of interstate commerce, the MCA exemption is applicable. *See* 29 C.F.R. § 782.7(b)(1) (1991) (interstate commerce under MCA includes, *inter alia,* transportation of property which moves in interstate commerce even though vehicles operate

solely intrastate); *Morris v. McComb,* 332 U.S. 422, 434, 68 S.Ct. 131, 137, 92 L.Ed. 44 (1947) (ICC has power to regulate pursuant to section 304 of MCA where 4% of driver's routes cross state lines). Although the plaintiffs here transported some property across state lines by airplane, they continued the transportation in rental cars.

7. The FHWA is an administration in the DOT that has authority to carry out the duties of the Secretary of Transportation with respect to motor carrier safety. 49 U.S.C. §§ 104(a), (c).

plaintiffs because the motor vehicles driven by them in their duties for CableData weigh less than 10,000 pounds.

The district court concluded that the DOT's failure to exercise its power to regulate does not mean that it has waived it. The court relied on *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244 (1943). In that case, the plaintiffs, employees of a motor private carrier, argued that the ICC had no power to regulate their working hours prior to the time it issued regulations for private carriers. At that time, the ICC had authority to establish working hours for private carriers "if need therefor is found." *See* 319 U.S. at 47, 63 S.Ct. at 919 (citing MCA § 204(a)(3); 49 U.S.C. § 304(a)(3) (repealed)). The employees asserted that because the ICC did not regulate or make a finding that regulation was necessary prior to 1940, they were entitled to overtime compensation under the FLSA up until the time the ICC found need to regulate. The Court rejected this argument and held that the requirement to make a finding of need before issuing regulations did not affect the existence of the ICC's power to regulate. *See* 319 U.S. at 47–48, 63 S.Ct. at 919; *accord Levinson*, 330 U.S. at 661, 67 S.Ct. at 938.

Similar to the statute at issue in *Southland*, 49 U.S.C. section 3102(b)(2) allows the DOT to regulate working hours of private carriers only where "needed to promote safety of operation". The district court reasoned that because section 3102 recodified section 304 without substantive change, *Southland* is controlling.[8] Moreover, in 1984, Congress amended section 3102 to require that the DOT "consider the costs and benefits" of amending the section, but it did not limit the section to apply only to commercial motor vehicles. *See* 49 U.S.C. § 3102(d). The district court thus found that the DOT's failure to find regulation necessary in a particular area does not mean that the DOT has waived its power to

regulate pursuant to section 13(b)(1) of the FLSA.

In 1977, the DOT published an interpretation of the FMCSR:

The [FMCSR] were designed primarily to apply to medium and heavy-duty commercial vehicles, and in many instances the Regulations are not suitable for passenger cars. Various parts of the FMCSR contain exemptions for the operation and driving of passenger automobiles. The Bureau, therefore, has not required compliance with the Regulations by private carriers of property insofar as they engage in the transportation of property in an incidental manner in passenger cars.

42 Fed.Reg. 60,079–60,080 (1977); 40 Fed. Reg. 50,677 (1975). The plaintiffs and the *amicus* argue that this "passenger automobile exemption" supports the conclusion that the DOT exempted the operation of passenger vehicles from the application of the MCA. The DOT interpretation, however, merely reflects the DOT's historic focus on safety regulations for medium and heavy-duty commercial vehicles without relinquishing its power over passenger vehicles engaged in transporting property in interstate commerce.

When issuing the FMCSR, the DOT recognized the "Congressional policy of applying available Federal motor carrier safety resources to larger vehicles." *See* 53 Fed. Reg. 18,042, 18,044 (1988). The DOT stated that it "historically regulated all commercial motor vehicles engaged in interstate commerce," but that it had "long focused its activities on larger vehicles" because vehicles weighing 10,000 pounds or less "have operating characteristics similar to a large automobile and generally pose no greater safety risk ... when used on the highway." *Id.* at 18,054. Moreover, as observed by the district court, the DOT's statement reflects its interpretation of the federal motor carrier regulations only and not of section 304 of the MCA. Nothing in

---

**8.** Where Congress reenacts a statute without substantive change, it generally is presumed to be aware of any administrative or judicial interpretations and to adopt those interpretations by reenactment. *See Lorillard v. Pons*, 434 U.S.

575, 580–81, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). Reenactment without change gives such interpretations the force of law. *See Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 115, 59 S.Ct. 423, 426, 83 L.Ed. 536 (1939).

the DOT's statement suggests that it has determined that the MCA does not apply to transportation of property by passenger vehicles. Additionally, as discussed below, because the plaintiffs' transportation of property in passenger cars is more than incidental, the "passenger automobile exemption" is inapplicable.

The plaintiffs further argue that the DOT's failure to regulate operations like CableData leaves the inference that it does not believe it has the authority to do so. They assert that the DOT's exclusion of lightweight vehicles from the FMCSR is analogous to the granting of a certificate of exemption under the MCA because although both Acts may be rescinded, they both remove a class of employees from the DOT's power to regulate. Thus, they contend that the DOT in effect has denied itself section 3102 power by determining that the regulation of lightweight motor vehicles is not needed to promote safety of operation.

However, the DOT expressly retained its power to regulate lightweight vehicles. In a statement issued in May of 1988, in connection with the publication of the DOT's Final Rule pertaining to the FMCSR, the FHWA explained the underlying rationale for not regulating lightweight vehicles at this time.

> Although the FHWA retains its authority to regulate lighter weight vehicles in the interest of safety (49 U.S.C. § 3102), the FHWA does not believe that such Federal regulation is warranted at this time.

*See* 53 Fed.Reg. 18,042, 18,044 (1988).

Next, the plaintiffs rely on cases from the Ninth Circuit for the proposition that where the DOT exempts a category of employees from the MCA, the FLSA applies. *See Jones v. Giles,* 741 F.2d 245, 249 (9th Cir.1984); *Newhouse v. Robert's Ilima Tours, Inc.,* 708 F.2d 436 (9th Cir.1983). In *Newhouse,* 708 F.2d at 439–40, the court held that because the plaintiffs, Hawaiian tour company drivers, had been granted a certificate of exemption by the ICC from compliance with the MCA, they became subject to the FLSA until the ICC revoked or conditioned the certificate of exemption. In *Jones,* 741 F.2d at 249, the court held that the plaintiffs, Washington state ambulance drivers, were not subject to the authority of the DOT because the ICC had exempted ambulance services from the MCA, *Lonnie W. Dennis,* 63 M.C.C. 66 (1954), and the DOT later incorporated this exemption into its interpretation of the FMCSR, 42 Fed.Reg. 60,080 (1977); 40 Fed. Reg. 50,677 (1975). In both of these cases, the ICC affirmatively exempted a group of employees. Here, however, the DOT has neither granted any specific exemption nor has it expressly disclaimed jurisdiction over employees of motor private carriers.

The plaintiffs claim that the DOT's exemption by affirmative action differs from a failure to promulgate regulations.

> A mere failure to promulgate regulations or to enforce regulations which have been promulgated is not sufficient to take an employee beyond the [DOT's power to regulate qualifications and maximum hours of service of employees under section 3102].... On the other hand, when employees are placed by affirmative action of the DOT ... beyond the scope of the regulations promulgated under the relevant power, the employees are no longer subject to the relevant power—for so long as that regulation or exempting action remains in effect under the DTA.

*Brock v. Pacific Vacuum Truck Co.,* 106 LC ¶ 34,892, 44,871, 27 WH 1617, 1621, 1987 WL 13,666 (C.D.Cal.1987). In *Brock,* the Secretary of Transportation had concluded that its regulations under the MCA went to the limit of its statutory authority and thus believed that any person not covered by the regulation necessarily fell beyond the scope of the statute.

Recently, the Second Circuit Court of Appeals, in a case similar to this, observed that *Brock* turned on deference to the Secretary's interpretation of the scope of the MCA. *Martin v. Coyne Int'l Enter.*

*Corp.,* 966 F.2d 61, 64 (2nd Cir.1992).[9] We agree with the *Martin* court that to the extent *Brock* suggests that where a group of employees has been left out of a regulation, the Secretary then lacks the power to regulate those employee, *Brock* is impossible to reconcile with the Supreme Court's earlier cases of *Southland, Levinson,* and *McComb.  Id.* at 64.

The *amicus,* the Secretary of Labor, acknowledges that the DOT may choose to exercise its regulatory power over passenger and lightweight vehicles but argues that until the DOT does, it lacks regulatory power over such vehicles. In *United States v. Nixon,* 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–02, 41 L.Ed.2d 1039 (1974), the Supreme Court held that although the Attorney General originally may have had power to represent the government in matters concerning the invocation of executive privilege, he delegated that power by regulation to the Special Prosecutor and lacked the power until he rescinded or amended the regulation; *accord United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). These cases are inapposite because here the DOT has not delegated its power but rather has chosen not to exercise it. The plaintiffs have failed to show that the DOT interpreted the scope of its authority under the MCA not to cover commercial operations involving passenger automobiles. Rather, the DOT's failure to exercise its regulatory power over passenger cars in commercial operation and other lightweight motor vehicles appears to stem from Congress' directive that the DOT focus on vehicles weighing more than 10,000 pounds.

The *amicus* further admits that a literal reading of the MCA subjects the plaintiffs to the DOT's regulatory power. The *amicus* asks that we interpret the word "power" to mean "power that is actually used" rather than "power that might someday be used". However, "[i]t is not necessary, as a condition precedent, to find that the Commission has exercised, or should exercise, such power by actually establishing qualifi-

cations and maximum hours of service.... *The existence of the power is enough." Levinson,* 330 U.S. at 678, 67 S.Ct. at 946 (emphasis added); *accord Morris v. McComb,* 332 U.S. at 434, 68 S.Ct. at 137; *Martin,* 966 F.2d at 62–63; *Marshall v. Union Pac. Motor Freight Co.,* 650 F.2d 1085, 1089 (9th Cir.1981); *Brennan v. Schwerman Trucking Co.,* 540 F.2d 1200, 1203 (4th Cir.1976). We conclude that the DOT has retained its power to regulate employees of motor private carriers who drive lightweight passenger vehicles in interstate commerce.

### III.

Having decided that DOT's election not to regulate lightweight and passenger vehicles does not strip it of its power to establish maximum hours and qualifications for private motor carriers, we must determine whether the district court erred in concluding that the plaintiffs fall within the MCA exemption. The Supreme Court has interpreted the word "employees" in section 304 to mean those employees whose duties affect the safety of operation. *See American Trucking Ass'ns,* 310 U.S. at 553, 60 S.Ct. at 1069. It is arguable that a lesser safety-related limitation should be placed upon the MCA's use of the term "private carrier" when examining the plaintiffs' effect on the safety of CableData's transportation operation. As stated by the district court, in enacting the MCA, Congress apparently was more concerned at the time with the dangers of commercial trucks and buses rather than of personal automobiles. *Friedrich v. United States Computer Serv.,* 787 F.Supp. 449, 456 (E.D.Pa.1991).

▪ The Supreme Court has recognized a *de minimis* exception to the application of the MCA. In *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947), the Court held that although loaders of freight affect the safety of operation and thus fall within the MCA, persons who merely handle

---

**9.** The *Martin* court held that the DOT had retained its power to regulate drivers who deliver laundry in trucks weighing 10,000 pounds or

less and thus the plaintiff-drivers were not subject to the FLSA overtime requirements. *Martin,* 966 F.2d at 64.

freight before or after loading perform tasks that may be too "trivial, casual or occasional" to affect safety and bring them under the MCA's authority. The district court here rejected a *de minimis* exception, however, because the MCA specifically defines motor private carrier. *Id.* at 18. The MCA does not limit motor private carriers to those who ship large amounts of property or ship property as their principal business; it merely requires that they transport property "to further a commercial enterprise." We agree that the safety effect of the plaintiffs' activities is not *de minimis*.[10]

█ In a similar vein, the MCA does not define "property" and it is arguable that the tools, parts, and equipment the plaintiffs transported were so trivial or insubstantial that they did not constitute property within the meaning of the MCA.[11] However, the DOL's Field Operations Handbook states that the DOT has jurisdiction over private carriers when "the transportation of property, regardless of its bulk or weight, is the primary purpose of an interstate trip by a private carrier, or if the transportation of such property is a distinct and definite reason for the trip along with the transportation of persons." *Id.* at 24a05(c). In an opinion letter of the Wage–Hour Administrator addressing similar facts, the DOL opined that service engineers employed by a national distributor of scientific and medical instrumentation fell within the MCA exemption. *See* Opinion Letter No. 1323 (WP–271) (June 5, 1974). The letter stated:

> [I]t would appear that the reason these service managers carry large quantities of service parts on their trips throughout the various States in their territory is to insure that they are able to perform whatever technical repair services may be required. Accordingly, the transportation of such property by motor vehicle

in interstate commerce is a distinct and definite reason for the trip by these service managers and that in those cases where, as a regular practice, a service manager transports this equipment across State lines they would qualify for the overtime exemption under section 13(b)(1) of the Act.

Although the DOT is not bound by the DOL's interpretation of the DOT's authority under the overtime exemption, the above reasoning is persuasive. Because the plaintiffs transported tools, parts, and equipment without which they could not have performed their duties for CableData and the services required of it by its customers, the transportation of those items was an independent and essential reason for their service trips. Thus the tools, parts, and equipment constituted property within the meaning of the MCA.

█ This conclusion does not give employers *carte blanche* authority to relieve themselves of the FLSA overtime requirements. The DOT's jurisdiction over employees of private motor carriers is limited to those who affect the safety of operation. The DOT has authority over drivers only where the employees regularly travel interstate or reasonably are expected to do interstate driving. *See Dole v. Circle "A" Constr., Inc.,* 738 F.Supp. 1313, 1323 (D.Idaho 1990) (DOT has jurisdiction over all employee-drivers if all drivers are subject to the indiscriminate distribution of interstate hauls); DOT Notice of Interpretation, 46 Fed.Reg. 37,902, 87,903 (1981) (DOT has jurisdiction over "a driver who is called on, or is subject to being called on, to drive in interstate commerce as part of the driver's regular employment ... [or] because of company policy and activity, the driver could reasonably be expected to do interstate driving").

---

**10.** A number of courts have held that drivers should seldom, if ever, fall within this *de minimis* exception. *See Levinson,* 330 U.S. at 677–78, 67 S.Ct. at 945–46; *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 210 (1st Cir.1972); *Sinclair v. Beacon Gasoline Co.,* 447 F.Supp. 5, 11 (W.D.La. 1976), *aff'd,* 571 F.2d 978 (5th Cir.1978). Note that the MCA exemption is not limited to driv-

ers. *See, e.g., Brennan,* 540 F.2d at 1204 (MCA exemption extends to private carriers' mechanics).

**11.** The parties stipulated that a field engineer's tool kit contains approximately 75 tools and weighs approximately 35 pounds.

■ Nonetheless, motor vehicle operators can come within the terms of the MCA exemption even though they may perform other duties than driving.

[I]t is not a question of fundamental concern whether or not it is the larger or the smaller fraction of the employee's time or activities that is devoted to safety work. It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.

*Levinson,* 330 U.S. at 674–75, 67 S.Ct. at 944.

Thus, it is not determinative that the plaintiffs may have devoted more time to field service than to the transportation of property. Because their interstate operations affected safety on the highways, the plaintiffs fell within the MCA even though they were not employed primarily as carriers. *See, e.g., Peraro v. Chemlawn Services Corp.,* 692 F.Supp. 109, 111, 114 (D.Conn.1988) (carpet cleaners who drive specially equipped trucks to clean carpets covered by MCA); *Sinclair,* 447 F.Supp. at 10–11 (employees who drive company-furnished pickups with tools, equipment, and supplies to service and maintain pipeline system covered by MCA); *Harshman v. Well Serv., Inc.,* 248 F.Supp. 953, 958–59 (W.D.Pa.1964) (employees who drive cement pumping trucks to service and repair gas wells covered by MCA), *aff'd per curiam,* 355 F.2d 206 (3d Cir.1965). Nor is it significant that the plaintiffs did not drive Cabledata's vehicles. *See* DOL Wage & Hour Field Operations Handbook at 24a05(d) (May 13, 1982) (employee of private carrier who transports property in interstate travel in personal vehicle is subject to otherwise applicable MCA exemption).

The dissent acknowledges that tool kits were necessary to the performance of plaintiffs' job duties, dissenting op. at 420, but suggests that the transportation of the kits and replacement parts in personal vehicles to customer sites was ancillary be-

cause plaintiffs "could have easily mailed the tool kits and replacement parts to customers sites." *Id.* This reasoning is predicated upon two assumptions, both of which are unrealistic and impractical. First, it assumes that the packaging of the kits and replacement parts is neither inconvenient nor expensive, that mail deliveries are timely made, and that the field engineers can effectively coordinate the needs of a highly sensitive cable television industry for repair and maintenance of its computer equipment with unpredictable mail delivery. Second, it assumes that the customers will bear the unnecessary expense and inconvenience of having these items mailed when they can be transported without charge or delay by the field engineers in their automobiles when they travel to perform their services.

Finally, the plaintiffs contend that although the district court in this case found it unlikely that Congress contemplated operations such as CableData's when enacting and reenacting the MCA, the court failed to carry out congressional intent. The district court observed that given the more recent enactment of the MCSA and its directives that the DOT focus on commercial motor vehicles weighing more than 10,000 pounds, "it is equally unlikely that the DOT will use the regulatory authority of § 3102 to establish maximum hours of employment that cover CableData's field engineers." *Friedrich,* 787 F.Supp. at 457. The court concluded, however, that because the language of the MCA gives the DOT that authority and the DOT has not specifically determined otherwise, courts must follow the statute unless Congress acts to limit the DOT's power over commercial carriers by personal automobile or the DOT more clearly determines that it is not authorized to regulate such vehicles. *Id.*

■ In interpreting a statute, we must start with the language of the statute itself. *Barnes v. Cohen,* 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). Although a statute should be interpreted in a fashion that does not defeat the congres-

sional purpose, *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 2266–67, 105 L.Ed.2d 377 (1989), a court may not rewrite an unambiguous law. Even if the court does not believe that Congress intended a specific outcome when it drafted a law, the court "must give effect to the unambiguously expressed intent of Congress." *Friends of Sakonnet v. Dutra,* 738 F.Supp. 623, 633 (D.R.I.1990) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)).

Facially, it may seem implausible to deny the DOL regulatory power to impose fair labor standards over drivers of passenger vehicles in interstate commerce. However, the legislature and not the judicial branch of government has the responsibility to expand the DOL's regulatory power. We consider it significant that as late as 1983 and 1984, when Congress renewed its concern over the safety of motor carriers in interstate commerce, it did not exempt lightweight vehicles or passenger cars from the regulatory power of the DOT. Pursuant to the tenets of statutory interpretation, we see no error in the district court's determination that it lacked the authority to limit the DOT's power to regulate the plaintiffs.

## IV.

In summary, we conclude that the DOT retains the power to establish maximum hours and qualifications for employees of motor private carriers who drive lightweight vehicles in interstate commerce. The DOT has not delegated or forfeited this power simply by choosing not to exercise it. Because the plaintiffs literally fell within the MCA exemption and neither Congress nor the DOT has taken action to the contrary, we hold that employees operating passenger automobiles in interstate activities which require them to transport property essential to their job duties come within the reach of the Federal Motor Carrier Act as amended and are therefore exempt from the FLSA's overtime compensation requirements.

Accordingly, the judgments of the district court will be affirmed.

SLOVITER, Chief Judge, dissenting.

The result of the majority's interpretation of the Motor Carrier Act (MCA) is that a substantial number of employed service people, ranging from piano tuners to typewriter repairers, will be denied the protection of the overtime provisions of the Fair Labor Standards Act (FLSA) merely because they drive their cars in the course of their work and carry tools or spare parts. I do not believe that Congress intended this result, and thus I respectfully dissent. I would reach the contrary result by holding that CableData is not a motor private carrier under the MCA because plaintiffs' duties did not involve the transportation of property.

### I.

The majority's opinion hinges on the exemption in the FLSA for those employees for whom the Secretary of Transportation may establish maximum hours of service. 29 U.S.C. § 213(b)(1) (1988). Under section 3102 of the MCA, the Secretary of Transportation has the authority to prescribe requirements for "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 3102(b)(2) (1988). A "motor private carrier," in turn, is defined as

a person, other than a motor carrier, *transporting property by motor vehicle* when—

(A) the transportation is as provided in section 10521(a)(1) and (2) of this title [i.e., interstate commerce];

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

*Id.* § 10102(16) (emphasis added). Further, "safety of operation" under section 3102 has been interpreted to mean "the safety

of operation of motor vehicles in the *transportation of* passengers or *property* in interstate or foreign commerce, and that alone." *Ex Parte No. MC–2*, 28 M.C.C. 125, 139 (1941) (emphasis added); *see also Ex Parte No. MC–28*, 13 M.C.C. 481, 483 (1939) (ICC has "power to prescribe qualifications and maximum hours for drivers and their helpers employed by private carriers of property who are engaged in driving or operating motor vehicles *transporting property* in interstate and foreign commerce") (emphasis added).

The question then is whether plaintiffs, all of whom carried a thirty-five pound tool kit, "small expendable replacement parts, and very rarely a personal computer board or tandem board," *Friedrich v. U.S. Computer Services*, 787 F.Supp. 449, 450 n. 3 (E.D.Pa.1991), in their personal vehicles as they drove to customer sites "to install, maintain or repair computer hardware provided by CableData," *id.* at 450, were "transporting property," as that term is used in the MCA.

## II.

As the majority readily admits, the MCA does not define the term "property." Majority Op. at 417. Nevertheless, despite concluding that it is the Department of Transportation (DOT) and not the Department of Labor (DOL) whose interpretations of the MCA are owed deference, *id.* at 411 n. 3 (citing *Levinson v. Spector Motor Service*, 330 U.S. 649, 676–77, 67 S.Ct. 931, 945, 91 L.Ed. 1158 (1947)), the majority relies on two interpretive statements made by the DOL to conclude that "the tools, parts, and equipment [carried by the plaintiffs] constituted property within in the meaning of the MCA." *Id.* at 417.

## A.

I find the majority's analysis of this issue unpersuasive for several reasons. First, the majority's reliance on DOL interpretive materials is undercut by the fact that the Secretary of Labor appears in this appeal as *amicus curiae* on behalf of the plaintiffs. Second, the DOL materials cited do not support the majority's conclusion that the plaintiffs' conveyance of tools, equipment, and replacement parts constitute transportation of property under the MCA as a matter of law. At best, they are ambiguous as to what circumstances must be present to qualify as transporting property.

While the DOL Field Operations Handbook, cited by the majority, states that the DOT has jurisdiction when transportation of property is a "distinct and definite reason for the trip," it also notes that when "incidental transportation of property is not significant as a reason for the trip," the DOT lacks jurisdiction. DOL Field Operations Handbook §§ 24a05(b), (c) (May 13, 1982). In addition, the Opinion Letter of the Wage–Hour Administrator referenced by the majority is inapposite in that the service engineers in that scenario carried *"large* quantities of service parts on their trips." Op. Letter No. 1323 (WP–271) (June 5, 1974) (emphasis added). That letter does not state whether the service engineers there carried all parts necessary for their service duties with them, or, as the plaintiffs argue happened in this case, the employer sent most of the necessary equipment directly to customer sites. Notably, the majority is unable to cite any authority *from the DOT* supporting its interpretation of "transportation of property."

It is not disputed that the plaintiffs' primary duties involved providing technical expertise to CableData customers and to perform installation, preventive maintenance, diagnostics, and repairs on the computer hardware. *See* App. at 45–46; S.App. at 3. While access to the tool kits was necessary to the performance of plaintiffs' job duties, their transportation of these kits and replacement parts in their personal motor vehicles was wholly ancillary to their need to transport themselves to customer sites. Had they desired to do so, it appears that plaintiffs could have easily mailed the tool kits and replacement parts to customer sites.[1] Such "transpor-

---

1. In neither *Sinclair v. Beacon Gasoline Co.*, 447 F.Supp. 5 (W.D.La.1976), *aff'd per curiam,* 571

tation of property" certainly was incidental to their main purpose of transporting themselves.

### B.

By taking an overly literal approach to the issue, the majority allows for an anomalous result in this case. First, the driving done by these plaintiffs does not raise safety concerns any different than those raised by sales or repair persons who carry no such equipment.[2] We are not dealing with truckers or bus operators here. The DOT itself recognized this distinction when it decided not to regulate lightweight vehicles such as automobiles.

Further, while the MCA's safety focus is broad, it is not without limits. As the Supreme Court recognized in *Boutell v. Walling*, 327 U.S. 463, 467, 66 S.Ct. 631, 90 L.Ed. 786 (1946), the power of the ICC (predecessor to the DOT) to regulate under section 204 of the MCA (codified at 49 U.S.C. § 3102 (1988)) is limited to employees of "carriers." Once it has been determined that an employee does not work for a carrier, safety concerns become immaterial under the MCA. *Id.* at 471–72, 66 S.Ct. at 636 (in case of non-carriers "it is not necessary to determine [whether] the em-

ployee[ ] ... do[es] work which affects the safety of operation of motor vehicles").

The Supreme Court has recognized a *de minimis* exception to the coverage of section 204. In *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947), the Court observed that "the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities" as not to affect the safety of operation of a motor vehicle enough to bring the employee within the coverage of the MCA. *See also Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42–43 (5th Cir.1962) (warehouseman who infrequently helped load supply of empty bottles onto truck fell under *de minimis* rule of *Pyramid Motor Freight* and thus did not fall under MCA exemption).[3]

I believe that the incidental carriage by plaintiffs of tool kits and minimal amounts of replacement parts is insufficient to render their employer a private motor carrier, and thereby exempt CableData from its obligation to pay overtime compensation under the FLSA.

---

F.2d 978 (5th Cir.1978), nor *Harshman v. Well Serv., Inc.*, 248 F.Supp. 953 (W.D.Pa.1964), *aff'd per curiam*, 355 F.2d 206 (3d Cir.1965), two cases cited by the majority, was there any such option. In *Sinclair*, gas company "field men" had no choice but to carry necessary replacement parts and equipment in half-ton pick-up trucks to various remote locations in order to maintain and repair their employer's vast pipeline network. 447 F.Supp. at 7. Similarly in *Harshman* the court explicitly found after a bench trial that

> [a] prime purpose (if not *the* prime purpose) for the operation of defendant's pump trucks in interstate commerce was the transportation of defendant's cement-pumping equipment (property) to job sites [customer gas wells] in states other than that of the point of origin. 248 F.Supp. at 958.

2. In contrast, in *Harshman*, the plaintiffs carried "auxiliary portable equipment, weighing in all 1,000 to 2,000 pounds," in specially equipped "pump trucks" permanently outfitted with heavy pumping equipment indispensable to the employees' duties as servicemen of oil and gas wells. 248 F.Supp. at 955. Similarly in *Peraro ex rel. Castro v. Chemlawn Servs. Corp.*, 692

F.Supp. 109, 111 (D.Conn.1988), also cited by the majority, the plaintiffs drove specially equipped carpet cleaning trucks. In both cases, the presence of the added equipment necessarily affected the safety of operation of the trucks by increasing the potential risks associated with travel by these vehicles in interstate commerce.

3. Following *Pyramid Motor Freight* courts have applied the *de minimis* exception to other MCA requirements. *See Coleman v. Jiffy June Farms, Inc.*, 324 F.Supp. 664, 670 (S.D.Ala.1970) (MCA exemption inapplicable where .23% of employer's deliveries came from interstate trips), *aff'd per curiam*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 29 (5th Cir.1964) (*de minimis* rule applies to those employees "who occasionally rode the truck with the driver to retail stores, and ... helped unload" and to those "who occasionally ... drove a truck"); *Kimball v. Goodyear Tire & Rubber Co.*, 504 F.Supp. 544, 548 (E.D.Tex.1980) (MCA exemption inapplicable where .17% of trips were interstate).

In enacting the FLSA in 1938, Congress hoped to protect workers from substandard wages and oppressive working hours. *See Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). The overtime requirement of the FLSA has the dual purpose (1) of spreading employment by encouraging employers to hire more workers at regular pay rather than paying time-and-a-half to current employees and (2) of compensating employees for the burden of a long work week. *See Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 423–25, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945). For these reasons, exemptions from the FLSA are narrowly interpreted, *see Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960), and strictly construed against the employer, *see Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945), who carries the burden of proving entitlement to an exemption under section 213(b)(1) of that Act. *Idaho Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 749, 15 L.Ed.2d 694 (1966).

The absence of enhanced safety concerns due to plaintiffs' transportation of the tool kits and minimal replacement parts makes the MCA inapplicable in that the policy considerations supporting exemption of motor private carriers from the requirement to pay overtime compensation to their drivers is not implicated. The majority's rule might encourage employers to require their employees who routinely drive lightweight motor vehicles in the course of their duties to carry small amounts of parts or equipment, and thereby avoid the overtime requirements of the FLSA.

### III.

Had the plaintiffs in this case carried a few diagnostic computer discs with them in order to service customer software instead of a tool kit and a few replacement parts, such "transportation of property" presumably would not preclude their claims for overtime. Because I do not believe that the uncontroverted facts compel a different conclusion in this case, I would reverse the judgment of the district court.